## BROWN v. BON HOMME COUNTY.

1. The county commissioners of Bon Homme county were authorized to fund the outstanding warrants of that county, by an act of the legislature approved February 17, 1877, which provided that the county commissioners, on the passage of the act, should have authority to provide that, whenever warrants should be presented, such warrants should be taken up, the interest calculated thereon to the 1st day of July, 1878,

and bonds issued therefor; and also provided that the county commissioners should, at their first session of the board after the passage of the act, make such provision as should be necessary and proper for carrying out the provisions of the act. *Held,* that the county commissioners were authorized to proceed to fund said warrants, and issue the bonds of the county therefor, before the time fixed for the date of said bonds, viz.: July 1, 1878, and that such bonds issued in July, 1877, if they had been properly authorized by the board, would have been good and valid bonds of the county, under the law, although the chairman of the board who signed them was not such chairman at the time the bonds bear date.

2.  The bonds in suit were signed and issued in July, 1877, by the chairman and clerk of the board, but the county commissioners of said county had made no provision for funding the outstanding warrants of the county, had taken no action under the act, and had not in any manner authorized the chairman and clerk to sign and issue them. *Held,* that the chairman and clerk had no authority to sign and issue said bonds, and that they were not, when so signed and issued, valid bonds of the county.

3.  A county must not only have legislative authority to issue bonds before its officers can bind it to the payment of bonds purporting to be issued on its account, but all who are required to participate in their issue must have performed their respective duties, before such bonds can be legally binding upon the county.

4.  Purchasers of county bonds are required to ascertain that bonds purporting to be issued by a county have been authorized by the officers or board having authority to issue them.

5.  Recitals in county bonds signed and issued by officers not authorized to issue them are not binding upon the county. Whether or not the bonds on which this action is brought contain recitals that would estop the county, if issued under the authority of the county commissioners, is not decided.

6.  The records of the county commissioners of Bon Homme county show that interest on the bonds in suit was paid semi-annually, for three and one-half years; that taxes were levied and collected sufficient to pay the interest on them for several successive years; that the warrants for which the bonds were issued were examined by the board of commissioners, found correct, and destroyed in presence of the board, and settlements were from time to time made with the county treasurer, in which seven interest coupons cut from each of these bonds, were exhibited to the board, and the amount paid on the same allowed him. *Held* that as the commissioners had authority under the act of the legislature to issue the bonds, the above and other acts constituted a ratification of the acts of the chairman and clerk in issuing them, and that the county is now estopped from denying their validity as against a *bona fide* purchaser for value.

(Syllabus by the court.  Argued Feb. 11, 1890.  Opinion filed July 8, 1890.)

Appeal from district court, Yankton county.    Hon. JAMES
SPENCER, Judge.

Action against the county of Bon Homme upon certain
bonds and coupons.    Judgment for plaintiff.    Defendant ap-
peals.    Affirmed.

The material facts are stated in the opinion.

*J. D. Elliott, District Attorney of Bon Homme county, N. J.
Cramer and W. L. Joy,* for appellant.

The recitals in these bonds that they were issued by a
board of county commissioners under the provisions of a cer-
tain act of the legislature do not estop the defendant county
from showing that these recitals are false, and that they were
not issued by authority of the board, nor in pursuance of, or
in conformity to, the act.    Dillon Mun. Corp. § 418; Bank v.
Porter Township, 110 U. S. 6.8; McClure v. Oxford, 94 U. S.
429; Anthony v. Jasper county, 101 U. S. 693; Bank v. Bergen
Co. 115 U. S. 384; Dixon Co. v. Field, 111 U. S. 83; Daveiss Co.
v. Dickinson, 117 U. S. 657; Bates v. Riverside School Dist.,
25 Fed. 192; Bank v. Town of Walcott, 7 Fed. 892; Carroll Co.
v. Smith, 111 U. S. 556; Buchanan v. Litchfield, 102 U. S. 278.
The bonds in suit were not issued or made by the board of
commissioners, nor by its authority, nor with its knowledge
or consent, and are void, and the purchaser took the same at
his peril and was bound to enquire into the power to issue
them.    Clark v. Des Moines, 19 Iowa, 215; Gould v. Sterling,
23 N. Y. 439; Hull v. Argulls, 12 Ia. 142; Anthony v. County
of Jasper, 101 U. S. 693; Hopper v. Town of Covington, 8 Fed.
777; Buchanan v. Litchfield, 102 U. S. 278.    Plaintiff failed to
prove a ratification, which estops the county from interposing
this defense to the bonds.    Norsk v. Fulton Co., 10 Wall. 676;
Simplot v. R. R. Co., 5 McCrary, 158.    Ratification must be
based upon full knowledge by the county of the material facts,
and this it did not have.    Dean v. Bassett, 57 Cal. 640; Civil
Code, § 1349; Davidson v. Dallas, 8 Cal. 244; Mayor of Bal-
timore v. Reynolds, 83 Am. Dec. 535.

*James H. Teller* and *Gamble Bros.*, for respondent.

It was not a condition precedent to the issuance of the

bonds in suit that the board of county commissioners by formal action authorize and direct their execution and issue. The funding act in question was not an enabling act merely, it was a command. Veazie v. China, 50 Me. 518; Supervisors v. U. S. 4 Wall. 446; Butterworth v. Hoe, 112 U. S. 50; Livingston County v. Bank, 128 U. S. 127. The recitals in the bonds and their execution and issuance by the chairman of the board and county clerk estops the county from interposing the defense that the recitals are false and the bonds issued without authority and not in conformity to the legislative act. Sherman County v. Simons, 109 U. S. 737; Marcy v. Oswego, 92 U. S. 639; Township of Coloma v. Eaves, 92 U. S. 44; Rock Creek v. Strong, 96 U. S. 273; French v. Edwards, 13 Wall. 506; Brooklyn v. Insurance Company, 99 U. S. 370; Commissioners v. Nichols, 14 O. St. 260; Knox County v. Aspinwal, 21 How. 545; Bigelow Est. 468; Orleans v. Platt, 99 U. S. 682; Meyer v. Muscatine, 1 Wall. 393; St. Joseph v. Rogers, 16 Wall. 644; Humboldt v. Long, 92 U. S. 642; Oregon v. Jennings, 119 U. S. 84; Blair v. Cummings, 111 U. S. 368; Daveiss County v. Huidekoper, 98 U. S. 98; Pompton v. Cooper Union, 101 U. S. 203. The fact that the bonds bear a date later than their execution does not invalidate them. Chickaming v. Carpenter, 106 U. S. 363; Weyauwega v. Ayling, 99 U. S. 112.

Conceding that the county board never authorized the issue, inasmuch as it had the power to authorize it, it had also the power to ratify it, and it did so ratify by levying taxes and paying interest on the bonds and by their other acts. Commissioners v. January, 94 U. S. 206; Pendleton County v. Amy, 13 Wall. 305; Supervisors v. Schenck, 5 Wall. 782; Ray County v. Van Sycle, 96 U. S. 688; Burr v. Carbondale, 76 Ill. 435; Shoemaker v. Goschen, 14 O. St. 587; Kerr on Fraud and Mistake, 137; Story on Agency, § 254.

CORSON, P. J. This is an action (two cases consolidated) brought by the plaintiff against the county of Bon Homme, on a number of bonds and coupons alleged to have been issued by said county, bearing date the 1st day of July, A. D. 1878. The bonds and coupons are in the following form, all being alike

except in number of bonds, and numbers and dates of payment of coupons:

"UNITED STATES OF AMERICA.

"Number 4.                                    Dollars, 500.

"Dakota Territory, County of Bon Homme.

"The County of Bon Homme, in the Territory of Dakota, for value received, promises to pay to Alfred Sully, or order, at the office of the treasurer of said county, in Bon Homme, on the first day of July, 1888, or at any time before that date, at the pleasure of the county, the sum of five hundred dollars, with interest at the rate of 10 per cent per annum, payable at the office of said treasurer, semi-annually, on the first day of January and July in each year, on presentation and surrender of the interest coupons hereto attached. This bond is issued by the board of county commissioners of said county, under the provisions of an act of the legislature of the Territory of Dakota, approved February 17, 1877, entitled 'An act authorizing the county commissioners of Bon Homme county to fund the outstanding indebtedness of said county, dated 1st day of July, 1878.' In testimony whereof the said county, by its board of county commissioners, has caused this bond to be signed by the chairman of the board, and attested by the clerk, with the county seal attached, this 1st day of July, 1878.

                                   ————————————,
          "Chairman of the Board of County Commissioners.
                    Attest:   ————————————,
[Seal of Bon Homme county.]                          Clerk.
$5.          The Treasurer of Bon Homme County,          $5.
                    Dakota Territory,

Will pay the holder hereof, on the first day of January, 1879, at his office, in Bon Homme, five dollars, for interest on county bond No. —, issued under provisions of an act of the legislature of the Territory of Dakota, approved February 17th, 1877.

                                   ————————————,
          "Chairman of the Board of County Commissioners."

On the back of each bond was printed a copy of the act, the title of which is given in the bonds, and the sections that

are deemed material to an understanding of this case are as follows:

"Section 1.    That the outstanding indebtedness of the county of Bon Homme, Territory of Dakota, payable out of the taxes for ordinary county revenues, special bridge fund, and the sinking fund tax, shall be funded as hereinafter provided.

Sec. 2.    That the county commissioners of the aforesaid county, on the passage of this act, shall have the authority and it is hereby made their duty, to provide that whenever warrants drawn upon the fund hereinbefore mentioned shall be presented to the county treasurer of said county, in sums of fifty dollars and upwards, for the purpose of being funded, such warrants shall be taken up, the interest calculated thereon on the first day of July, 1878, and in lieu thereof and in payment of said warrants, that the bonds of said county, in denominations of not less than fifty dollars, bearing date July 1, 1878, and with coupons for interest attached to said bonds, and payable as hereinafter mentioned, be issued to the holder of such warrants."

"Sec. 4.    It shall be the duty of the county commissioners of said county to fund the outstanding indebtedness, as herein provided, to levy and collect annually a tax, in cash, sufficient to pay the interest on said bonds, and after five years they shall collect, in addition thereto, annually, a sinking fund bond tax sufficient to pay the principal of such bonds by the time they shall become due and payable; and with such sinking fund bond tax, as fast as the same is collected, they shall go into the market and buy up such bonds, and retire the same, and such interest tax and sinking fund bond tax shall not be used for any other purpose; provided, that no more than the par value shall be paid for said bonds."

"Sec. 6.    The county commissioners of said county shall, at the first session of the board after the passage of this act, make such provisions as shall be necessary and proper for carrying out the provisions of this act, or as soon thereafter as it can reasonably be done; and such bonds shall be either printed or lithographed, with interest coupons thereto attached, and

shall be executed by the chairman of the board of commission-
ers for the county aforesaid, and shall be under the seal of the
county, and attested by the clerk thereof, and shall be payable
to the order of the persons respectively presenting such war-
rants."

"Sec. 8. The county treasurer of Bon Homme county shall
provide himself with a book, to be called the bond register,
wherein he shall note the number of all bonds issued, the date
when issued, the party to whom issued, and the amount of the
warrant or warrants, and the amount of interest thereon, for
which such bond was exchanged, and such other fact as he
shall be required thereunto by the county commissioners; and
such register shall, immediately after the 1st day of October,
1878, be deposited with the county clerk, and shall remain in
his office as a public record."

"Sec. 13. The county commissioners shall annually cause
to be levied and collected a tax not to exceed 25 per cent in ex-
cess of the estimated amount required for county purposes, and
the surplus tax so levied and collected shall go to create a sink-
ing fund to defray the extraordinary expense of said county."

The complaints are in the usual form, and the answers,
which are substantially the same, are, in substance, as follows:
After denying each and every allegation of the complaint not
specifically admitted, they proceed to allege, as matter of de-
fense, that the board of county commissioners of said Bon
Homme county never made any provision for funding the in-
debtedness of said county, in pursuance of the provisions of
the act under which said bonds and coupons purport to be
issued, and that, until the said board had provided for carry-
ing into effect the said act, there was no authority or power
conferred upon the chairman and clerk of said board to issue
the bonds of the said county, sued upon in this action; that said
board never authorized the issue of said bonds, or empowered
the chairman and clerk of said board to sign the same on behalf
of the county; that the bonds in suit purporting to be signed
by the chairman and clerk of said board are not the bonds and
coupons of said county; that the same were issued without con-

sideration, or the surrender of any warrants of the county authorized to be funded under the said act; that the said bonds and coupons are illegal and void, and that A. M. Young, who purports to have signed them as chairman, was not such chairman at the time the bonds purport to have been issued, and that the defendant is not indebted upon said bonds in any sum whatever.    The case came on for trial on the 23d day of November, 1888, before the Hon. JAMES SPENCER, presiding judge, and a jury.    On the trial the plaintiff introduced in evidence certain records from the office of the county clerk of Bon Homme county, from which it appeared that A. M. Young, who purports to have signed the bonds in suit, was a member of and chairman of said board during the year 1877, but was not a member of or chairman of said board at any time during the year 1878; that the county clerk who signed said bonds was register of deeds, and *ex officio* clerk of said board, during the years from 1875 to 1880 inclusive.    No record or entry appeared in said records showing that the commissioners of said Bon Homme county had authorized the issue of these bonds, or any of them, or any bonds, under the act of 1877, or that said commissioners had taken any action in reference to them prior to or at the time of their issue.    Oral evidence was then given tending to prove that the bonds were filled up by the county clerk between the 6th and 10th days of July, 1877, signed by A. M. Young as chairman of the board, and by the clerk of said board, and the seal of the county affixed thereto by the clerk of said board, and that the bonds, when so signed and sealed, — amounting to between ten and eleven thousand dollars,— were turned over to the county treasurer; that on the same or following day the bonds in suit were received from the treasurer of the county by the county clerk, for warrants surrendered up to him by said clerk, which warrants had been sent by Edmunds & Wynn, bankers at Yankton, to said clerk, or taken up from Yankton by him, and that the clerk took the bonds so received from the treasurer back to Yankton, and delivered them to said Edmunds & Wynn, about the same time. No evidence was offered tending to show that the board of

county commissioners, or any member thereof, except the chairman, A. M. Young, had any knoweledge of said bonds, or of their issuance, before or at the time they were issued.

The first question, therefore, to be determined by the court is, are the bonds, so signed by the chairman Young and the county clerk, in July, 1877, but bearing date July 1, 1878, without authority to issue them being conferred by the board of county commissioners, valid bonds of Bon Homme county, and binding upon that county? The first objection to the validity of these bonds is that they were signed and issued before the time they bear date, and that, at the time they bear date, A. M. Young, who signed them as chairman, was neither chairman nor member of the board of commissioners of Bon Homme county. The act under which these bonds were issued seems to contemplate the issuance of bonds to fund the outstanding warrants of the county in advance of the time they are to bear date. The second section provides "that the county commissioners of the aforesaid county, on the passage of this act, shall have the authority, and it is hereby made their duty, to provide that, whenever warrants drawn upon the fund hereinbefore mentioned shall be presented * * * such warrant shall be taken up, the interest calculated thereon to the 1st day of July, 1878, * * *" and bonds issued therefor to the holder of such warrants. And Section 6 provides: "The county commissioners * * * shall, at the first session of the board after the passage of this act, make such provisions as shall be necessary and proper for carrying out the provisions of this act, or as soon thereafter as it can reasonably be done. * * *" As the act was approved February 17, 1877, it is quite clear that the legislature intended to give the board power to proceed at once to fund these warrants, and that the date that they should bear was inserted in the act for the purpose of fixing a time up to which interest on the warrants should be calculated, and from which interest on the bonds should commence to run. At the time these bonds were signed and issued, A. M. Young was, as shown by the commissioners' record, the chairman of the board. We are of the opinion, therefore, that

this objection should not be sustained. Chickaming v. Carpenter, 106 U. S. 663, 1 Sup. Ct. Rep. 620; Town of Weyauwega v. Ayling, 99 U. S. 112.

The second objection to the validity of these bonds is, that no action was ever taken by the commissioners in regard to the issuing of these bonds, and no provision was ever made by them for funding the outstanding warrants of the county, as provided in said act, and that the plaintiff should have shown that such action by the commissioners was had, providing for the funding of the outstanding warrants of Bon Homme county, and authorizing the issuance of these bonds, to entitle the plaintiff to recover in this action. A county must have legislative authority to issue bonds, before its officers can bind it to the payment of bonds purporting to be issued on its account. The public can act only through its authorized agents, and it is not bound until all who are required to participate in what is to be done have performed their respective duties. Anthony v. Jasper Co., 101 U. S. 693; Bank v. Bergen Co., 115 U. S. 384, 6 Sup. Ct. Rep. 88. The law under which the county of Bon Homme derived all its powers provided that the county commissioners should fund the outstanding indebtedness of Bon Homme county that should exist on the first day of July, 1878. The power of the board under the law was limited. It is not a case where there existed in the board a general power to issue negotiable securities of the county. It is a case where there was no power, except as specifically delegated by law for a particular purpose. All persons taking securities of public corporations having only special powers must see to it that the conditions prescribed for the exercise of the power existed. As an essential preliminary to protection as a *bona fide* holder, authority to issue them must appear. Bank v. Bergen Co., *supra;* Marsh v. Fulton Co., 10 Wall. 676; Cagwin v. Town of Hancock, 84 N. Y. 532; Floyd, Acceptances, 7 Wall. 676. Every person purchasing such bonds is chargable with notice of that which the law requires him to know, and he is chargable with notice of what is contained on the face of the bonds he is deal-

ing in; and if, upon the face of the bonds, the law authorizing their issue is referred to, he is bound to take notice of the statute, and of all its requirements. In this case not only was the title of the act under which the bonds were issued given on the face of the bond, but all the provisions of the act were printed on the bonds. It will be observed that the act under which these bonds purport to have been issued conferred upon the commissioners of Bon Homme county special authority to fund the outstanding indebtedness of that county that might be existing on the first day of July, 1878, but conferred no such authority upon the chairman and clerk of said commissioners. It was the county commissioners, and the commissioners only, that could make the necessary provisions required to be made by the act for funding this outstanding indebtedness, and until they made the necessary provisions, and authorized the issu-ance of bonds, no bonds legally binding upon the county could be issued. In other words, bonds not so issued were not the bonds of the county. The purchaser was consequently charged with the duty of ascertaining the fact that the commissioners had performed the duty imposed on them, and that authority to issue said bonds had been conferred upon the chairman and clerk of the board by the board of county commissioners of Bon Homme county. It was the duty of the purchaser of the bonds in suit to have ascertained by an examination of the records of that county whether or not the board of county commissioners of Bon Homme county had made the necessary provisions for funding the outstanding indebtedness of that county, and had authorized the issuance of these bonds by the chairman and clerk. Had he caused such an examination to be made, he would have been advised that no such provisions had been made, and that no authority had been given by the board for the issuance of these bonds, and that they were not, at the time they were issued, obligatory upon the county. It was strenu-ously contended by the learned counsel for the respondent that no action of the board of county commissioners was necessary that, as the law made it the duty of the commissioners to fund the county indebtedness, the chairman and clerk could

proceed to issue the bonds, as they did do, without authority from the board to act in the matter, and authorize their issuance. We cannot so hold. The issuing of these bonds involved the performance of important duties imposed upon the county commissioners, as the fiscal agents of the county, that could only be performed by them. As the act only authorized the commissioners to fund the outstanding indebtedness it was, their duty to ascertain what that outstanding indebtedness was, to provide for a proper examination of the warrants so to be funded, and determine the amount, denomination, and number of bonds to be issued, to require the treasurer of the county to note such facts on his bond register as they might deem necessary in order to fully protect the county, and to make, generally, such regulations in regard to the issuing of said bonds as they might deem expedient, and finally to authorize the issuance of the bonds. Until these acts were done, the chairman and clerk were without authority to act. Any other rule would, in our opinion, be fraught with too much danger to public corporations. The doctrine now established making the acts and recitals of the duly authorized agents of the county, acting within the scope of their authority, obligatory upon the corporation, is sufficiently onerous without adding to it a liability for acts and recitals of unauthorized agents. Bank v. Bergen Co., *supra*; Whiteside v. U. S. 93 U. S. 247; County of Daviess v. Dickinson, 117 U. S. 657, 6 Sup. Ct. Rep. 897; Cagwin v. Town of Hancock, 84 N. Y. 532.

The learned counsel for respondent contends that the defendant is estopped from contesting the validity of these bonds by reason of the recitals therein contained. There are no recitals in these bonds of the existence of any facts that the chairman and clerk of the board were authorized to ascertain and determine. The effect of recitals made by a board, or by officers authorized to make them, is clearly stated by the court in Bank v. Bergen Co., *supra:* "There is a class of cases where recitals in obligations are held to supply such proof of compliance with the special authority delegated as to preclude the taking of any testimony on the subject, and estop the obligor

from denying the fact. ᵒ These have generally arisen upon municipal bonds authorized by statute, upon the vote of the majority of the citizens of a particular city, county, or town, and in which certain persons or officers are designated to ascertain and certify as to the result. If, in such cases, the bonds refer to the statute, and recite a compliance with its provisions and have passed for a valuable consideration into the hands of a *bona fide* purchaser, without notice of any defect in the proceedings, the municipality has been held to be estopped from denying the truth of the recitals. The ground of the estoppel is that the officers issuing the bonds and inserting the recitals are agents of the municipality, empowered to determine whether the statute has been followed, and thus bind the municipality by their determination." Counsel for respondent has cited several cases in which bonds have been issued by the chairman and clerk of towns and counties with recitals which the supreme court has held estopped the municipality, but it will be seen, we think, from an examination of them, that the principle upon which the cases were decided is that stated by Justice FIELD in the Bergen county case, namely, that the statute imposed upon the officers who executed the bonds certain duties, such as ascertaining the result of an election or vote taken upon the issuance of the bonds, that could only be performed by such officers. In Brooklyn v. Insurance Co., 99 U. S. 370, cited by respondent's counsel, the court says: "The bonds were signed by the officers designated for that purpose by the charter of the railroad company, and, after the vote and subscription, it does not seem necessary that the board of auditors or other corporate authorities of the town should have participated in their issue and delivery." Again, in the same opinion the court says: "It was made, by the express words of the statute, the duty of the president of the board of trustees or other executive officer of such town, and of the supervisor of such township, to make the subscription voted for, receive the certificates therefor, and execute to the company bonds of the required amount, * * * signed by such president, executive officer, or supervisor, and attested by the clerk."

In Town of Coloma v. Eaves, 92 U. S. 484, also cited by counsel for respondent,—which was a case where the recovery was resisted by the town, mainly upon the alleged ground of the want of power in the officers of the town to issue the bonds because the legal voters of the town had not been notified to vote upon the subscription questioned,—the court says: "The duty of ascertaining [the result of the vote] was plainly intended to be vested somewhere, and once for all; and the only person spoken of who have any duties to perform respecting the election, and action consequent upon it, are the town clerk, and the supervisor or other executive officer of the city or town. It is a fair presumption, therefore, that the legislature intended that these officers, or one of them, at least, should determine whether the requirements of the act prior to subscription to the stock of the railroad company had been met." These cases sufficiently illustrate the principle upon which this class of decisions is founded, and show clearly that the authority of such officers to sign and issue the bonds is derived from the act of the legislature, and the vote or election held thereunder, and not from any board having duties to perform in regard to the matter; and also show that the recitals made by such officers are held to conclusively bind the corporation, because the recitals are of facts it is made the duty of such officers to ascertain and determine "once for all." In the case at bar no duties of this kind were imposed upon the chairman and clerk of the board, or any duties other than the ordinary clerical duty of signing the bonds and coupons, when authorized so to do by the county commissioners; consequently there are no recitals in these bonds that they were authorized to make, as such officers, and the alleged recitals do not, therefore, conclude the county. These bonds, therefore, being issued by the chairman and clerk of the board, without being authorized to so issue them by the county commissioners, were not binding upon the county.

The plaintiff, not relying entirely upon the validity of the bonds in suit, introduced evidence tending to prove that the county, by the acts of its county commissioners, treasurer, and other officers, had ratified the act of the chairman and clerk of

the board in issuing these bonds, and now contends the county is estopped from denying their validity. The acts relied on, and given in evidence, were the proceedings of the county commissioners of Bon Homme county, on the first day of October, 1877, showing that the treasurer of the county presented certain warrants taken by him in exchange for county bonds numbered from 1 to 33 inclusive; that the same were compared with the bond register and found to agree therewith, and were ordered destroyed, which proceedings of the board were published in the official newspaper of the county the same month; that on the 10th day of January, 1879, a report of a committee previously appointed by the board was made to the board, showing that among the items of indebtedness of the county was an item of $27.700, bonds of 1878, which report was adopted by the board, and the vouchers and warrants reported on by them were ordered destroyed; also that the warrants taken in exchange for county bonds, numbered from 34 to 61 inclusive, amounting to $12,800, were exhibited and examined by the committee, and destroyed by burning in the presence of the board; that the county levied taxes for the years 1878, '79, '80, '81, sufficient not only to pay the interest on bonds of 1875 issue, but to pay the interest on the 1878 issue; and also that the coupons due for these years were paid by the county treasurer, and the same allowed him in his several settlements with the commissioners.

At the close of plaintiff's testimony, the defendant moved the court to instruct the jury to return a verdict for defendant, for that it did not appear that the board of county commissioners of Bon Homme county ever authorized the chairman and clerk to execute the bonds in suit, and for the further reason that the evidence of ratification introduced by the plaintiff is not sufficient to entitle the plaintiff to recover; which motion was denied. We think the learned court very properly denied the motion. The evidence of ratification introduced, uncontradicted, and for the purposes of the motion taken as true, was, in our opinion, sufficient to have warranted the jury in finding a verdict for the plaintiff. Defendant then called, as a witness,

John Stafford, who testified that he was one of the county commissioners of Bon Homme county for the years 1877, '78 and '79. The following question was then propounded to him: "You may state to the jury what, if anything. you know with reference to Bon Homme county issuing any bonds in 1877 or 1878." Counsel for plaintiff objected to the evidence on the ground that "it is incompetent, for the reason that, if the facts were proven, it would be no defense to this action, inasmuch as they are estopped by their acts of ratification, and by the recitals on the bonds, from setting up such defense." Any evidence of irregularity, and certainly the lack of knowledge on the part of one witness, would be no defense. The objection was sustained. Defendant's counsel then made the following offer: "The defendant offers to prove by the witness, who was a member of the board of county commissioners at the time the bonds in suit purport to have been issued, that the board of commissioners of Bon Homme county never issued or authorized the bonds in suit to be issued under the act of February 17, 1877; that the board of county commissioners had no knowledge that the bonds had been issued under said act; that at the time of levying of the taxes for the years in which it is shown a tax was levied and collected for the payment of interest coupons, the board of commissioners had no knowledge that bonds had been issued under the act of February 17, 1877." To which counsel for plaintiff objected on the ground that "the evidence sought to be adduced is irrelevant, immaterial and incompetent, and for the reason that by the acts of ratification proved, as well as by the recitals in the bond, the defendant is estopped from setting up these defenses. That if any such evidence were adduced it would be no defense." And the second offer was objected to for the same reasons, and, in addition thereto, that it would contradict the records by oral testimony. Objection sustained. Counsel for defendant then made the following offer:. "The defendant offers to show by this witness that the board of county commissioners of Bon Homme county never authorized the issue of the bonds in suit; never authorized the treasurer to receive the warrants

claimed to have been surrendered at the time the bonds were issued; that the board of county commissioners of Bon Homme county never made any provision for the carrying out of the. act under which it is claimed the bonds in suit were issued. The defendant offers to show by the then treasurer of Bon Homme county, Frederick Wells, that he never delivered the bonds in suit; that he never had the bonds or any portion of them in his possession; that he never issued or authorized the bonds in consideration or upon the surrender to him of any warrants of Bon Homme county." To which the plaintiff interposed an objection, "for the reason that the evidence sought to be adduced is irrelevant, immaterial, and incompetent, in that it seeks to contradict the official record, and to substitute oral testimony for the record, and that it affords no defense in this action." Objection sustained." The court then directed the jury to return a verdict in favor of the plaintiff, and against the defendant, for $7,330.25. To the direction of the court to return a verdict, objection was made, and an exception taken.

We will consider these two offers together, as they were both made in pursuance of the same object, which was the introduction of evidence on the part of defendant to contradict the evidence of ratification given on the part of plaintiff, by showing that the acts of alleged ratification were not binding upon the county, because the acts were done without the knowledge of the existence of the bonds in suit; or perhaps, more properly, to rebut the presumption of knowledge that naturally arises from the acts themselves. The exclusion of this testimony must have been based by the learned court upon the theory that the acts of the commissioners, as shown by the records, constituted a full ratification, not open to rebuttal, of the acts of the officers issuing these bonds, and that the acts established an estoppel on the part of the county. In this we are of the opinion that the court was correct. It seems to be the established doctrine of the courts, state as well as national, that municipalities may, not only by recitals in bonds, but by acts of ratification, be estopped from setting up irregularities in the issuance of bonds, when they have passed into the hands of

*bona fide* holders for value, before maturity. Judge Dillon, in his work on Municipal Corporations, (4th Ed.) § 548, says: "As to irregularities in the exercise of an express power to issue bonds, and particularly in respect to steps connected with preliminary conditions, the failure of the municipality or of the tax payer to enjoin the issue, followed by long acquiescence, especially when this is accompanied by affirmative acts which recognize the validity of the bonds, such as receiving and holding the stock or consideration for the bonds, or paying interest on them for a series of years, has been held to estop the munici- pality from defending, on the ground of non-compliance with conditions precedent, especially when the bonds, as is usually the case, have been negotiated for value. But the corporation is in no case estopped from setting up a total want of power to issue the bonds." Supervisors v. Schenck, 5 Wall. 782; County of Ray v. Vansyclc, 96 U. S. 88; Pendleton Co. v. Amy, 13 Wall. 306; Burr v. City of Carbondale, 76 Ill. 435; Rogers v. Burlington, 3 Wall. 654; Bissell v. Jeffersonville, 24 How. 300; State v. Van Horne, 7 Ohio St. 331; Shoemaker v. Goshen Tp., 14 Ohio St. 587; Butler v. Dunham, 27 Ill. 477; Stienes v. Frank- lin Co., 48 Mo. 176; Barrett v. County Court, 44 Mo. 201. In this case the county commissioners were fully authorized by the act of the legislature to fund the indebtedness of the county, and issue the bonds of the county therefor, and hence it was within the powers of the board and the county to ratify the unauthor- ized act of its chairman and clerk in the issuance of the bonds in suit. That this has been done in this case is fully shown by the records introduced in evidence. A careful examination of this evidence shows that, at a meeting of the board of commis- sioners held in October, 1877, a few months after the bonds in suit were issued, an order was entered reciting that the treas- urer had presented the warrants taken in exchange for bonds numbered from 1 to 33, inclusive, and, being found correct, the same were destroyed by burning in the presence of the board. This order was published in the official newspaper of the county the same month. At the same time an entry was shown in the account of Treasurer Wells, as follows: "By amount of war-

rants exhibited and examined by the board of county commis-
sioners, and destroyed in presence of board, by burning, $14,-
900." In January, 1879, a report was made by a committee ap-
pointed by the board, in which, among the liabilities of the
county, is the item of amount of bonds issued in 1878, $27,700,
and at which meeting of the board John Stafford, the witness
introduced on the part of the defendant, appears to have been
present, and this report was accepted and approved by the
board. At this same meeting the record shows that warrants
taken in exchange for county bonds from number 34 to 61, inclus-
ive, amounting to $12,800, were presented by the county treas-
urer, examined by the board and found correct, and destroyed
by burning in presence of the board. A large number of en-
tries from the records were given in evidence of the levying
and collection of taxes for the years 1878, '79, '80, '81, and '82;
sufficient, not only to pay the interest on the $5,500 1875 bonds,
shown by the report of the committee to be outstanding, but
also the interest on the 1878 bonds. It will be observed that it
only required $550 to pay the annual interest on the 1875 bonds,
yet the amount levied each year, for interest, varied from
$2,499.12, in 1878, to $3,676.16, in 1881. The coupons cut from
the bonds in suit, bearing date July 1, 1878, were regularly
paid, semi-annually, up to January 10, A. D. 1882, making
seven payments in all which payments were regularly allowed
by the commissioners in their settlements with the county treas-
urer, and not until about July, 1882, does the legality of these
bonds seem to have been in any manner questioned, by either
the county commissioners or the county of Bon Homme.

The plaintiff proved on the trial that he purchased the
bonds in suit—being a part of the July, 1877, issue—in 1880,
and paid their full par value, and without notice of any irregu-
larity in their issue, or of any defects in the same. Whatever
exception the people of Bon Homme county might have taken
to these bonds at the time they were issued, it is certain they
took none, either as individuals or through their authorized
agents, the county commissioners, until long after these bonds
had passed into the hands of innocent purchasers for value.

They stood by and permitted taxes to be levied to pay the interest, and from which the interest on the coupons for several years was promptly met, and paid without protest, remonstrance, or complaint.  And now it is asked that the irregularity in the issuance of these bonds, in the acts of their own officers, which they might have avoided by prompt action, but which they so long acquiesced in and repeatedly ratified, may be set up to defeat the bonds in this suit on the part of an innocent purchaser for full value, and who has, or may have, relied upon the long acquiescence and repeated acts of ratification.  The records of the county show that the warrants surrendered up for these bonds were destroyed in 1877, by the agents of the defendant.  To compel an innocent purchaser to now litigate with the county, after a lapse of more than ten years, the validity of these warrants, when the warrants themselves are destroyed, and the facts relating to them have almost, if not entirely, passed from memory, would, it seems to us, be doing manifest injustice to the present holders of the bonds.  So far as the records of the county show, the county has received full consideration for these bonds.  Warrants, examined by defendant's own agents, the county commissioners, and found correct, for the full amount of the bonds, were surrendered up and destroyed.  No offer was made to show that these warrants were not regularly and properly issued and valid obligations of the county, and, in the absence of anything in this record showing that the warrants were not legal and valid, it is our duty to assume they were so.  The county cannot restore them to the holders of the bonds, nor can it in justice ask to be relieved from the payment of the bonds, while it retains the consideration for which they were issued.  We think this is a strong and clear case for the application of the doctrine of estoppel.  The claims of good faith and fair dealing are as obligatory upon corporations and communities as upon individuals.

The evidence sought to be introduced in this case, on the part of the defendant, was not, in our opinion, admissible, as it must necessarily have tended to contradict the record evidence

in the case. Stafford, the witness called, was, as the record disclosed, present at several of these meetings of the board, at which acts of ratification, entirely inconsistent with his proposed testimony, were done and entered of record. The records of the commissioners show that he was present when the committee made its report, in which it showed that $27,700 in bonds had been issued in 1878, and which report was adopted and approved by the board. and in which the board examined warrants to the amount of $12,800 surrendered for bonds of this issue. The records show that he was present when levies of taxes were made for interest to amounts that must have been several times the amount required for interest on the 1875 bonds. The same may be said of Mr. Wells, county treasurer at the time these bonds were issued. The record discloses the fact that in October, 1877, he credits himself with warrants to the amount of $14,900, received for bonds presented to the commissioners, and destroyed. The county commissioners are required by law to keep a record of their proceedings, and those records are not only the best, but in ordinary cases the only evidence admissible of the acts of the commissioners as a board. It is to these records that parties interested must look to ascertain the proceedings and acts of the board. They cannot be contradicted or varied by the testimony of the commissioners, except in a direct proceeding to correct them. Here it is sought by this offer not to contradict or impeach these records directly, but to do so indirectly by doing away with their effect as evidence of ratification, by the testimony of the witness Stafford that, when the acts were done, disclosed by this record, he, as a commissioner, did not know that the bonds in suit had been issued and by the further offer, as we understand it, to prove also by this witness that the board of commissioners did not know of the issuance of or existence of these bonds when these acts so appearing of record were done. It seems to us that public policy requires that such evidence should be excluded by the courts. To permit county commissioners, after the lapse of years, as against innocent holders of county securities, to virtually contradict their own acts, not only of record in their own office, but pub-

lished to the world in their official paper, by testimony that they did not know, at the time the acts were being done, of the existence of certain antecedent acts, when their own records show that those antecedent acts were repeatedly before them, and could not, without the grossest carelessness or inattention on their part, have been overlooked, would, in our opinion, establish a most dangerous precedent.   It is the duty of these officers to know, and they must be presumed to know the contents of their own records, and what acts they themselves are doing while acting as members of the board.   They cannot be permitted to deny the existence of acts or facts shown by their own records while they are such members.   These records are, or should be, read over at each session of the board.   They are, or should be, published in the official newspaper of the county.   We again repeat, public policy forbids that such testimony should be received by the courts, and such evidence can no more be admissible to weaken the effect of their records than to contradict or vary them.   We are of the opinion, therefore, that the ruling of the court was correct, and that the judgment should be affirmed, and it is so ordered.