The Town of Cherry Creek, Appellant, *v.* Philip Becker et al., Respondents.

Where a town has issued bonds in aid of the construction of a railroad and the action of the town commissioners in reference thereto has been reported to the tax-payers, and no questions raised until interest has been paid upon the bonds by the town, for six years or more, to holders who have purchased them in good faith, and in ignorance of any defect in the proceedings under which they were issued, it may not invoke the aid of a court of equity to procure the cancellation or setting aside of the bonds, but will be left to its remedy by defense to an action at law upon the bonds.

Where, in proceedings under the town bonding acts (Chap. 907, Laws of 1869; Chap. 925, Laws of 1871) to bond a town in aid of a railroad, the county judge acquired jurisdiction to determine the question as to whether the petition presented to him was signed by a majority of the tax-payers of the town, *held*, that his decision thereon, so long as the same has not been reversed for error or set aside for irregularity, is conclusive and may not be questioned in an action by the town to have its bonds set aside or cancelled.

The jurisdiction of a county judge in such proceedings is not affected by the fact that the judgment rendered by him was based upon two separate and distinct petitions, so long as the aggregate amount of bonds was not to exceed the statutory limit.

Conceding that a distinct and separate judgment should have been rendered upon each petition, this, at most, is an error or irregularity to be corrected by review or motion.

Where, prior to the going into effect of the amendment of the State Constitution (§ 11, art. 8), which provides that no municipality shall thereafter give or loan its money or credit in aid of an individual or corporation, bonds were executed by a town in aid of a railroad company, in pursuance of an agreement between the commissioners of the town and the company, and had been placed in escrow, to be delivered to the company in exchange for its bonds, when its road was constructed through the town, *held*, that the contract was valid and binding upon the town; that the obligations thereof were not and could not be impaired by said amendment; and that the bonds were valid, although delivered to the railroad company after the amendment went into effect.

Where a petition, presented to the county judge under said acts, provided that the town bonds should be issued on the condition that the road be constructed through the town, a certain portion when the road was located, another portion when it was graded, and the remainder when it was completed, and the whole amount of bonds were issued when the road was completed through the town, but when a small portion thereof outside of the town remained to be constructed, *held*, that there was a substantial compliance with the condition; but, if not fully complied with, that this did not invalidate the bonds in the hands of a *bona fide* holder. (§ 1, chap. 925, Laws of 1871.)

*Falconer* v. *B. & J. R. R. Co.* (69 N. Y. 491), distinguished.

(Argued June 18, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 19, 1888, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial without a jury.

The nature of the action and the material facts are stated in the opinion.

*C. R. Lockwood* for appellant. The non-review by certiorari, as provided in said bonding act, is no estoppel to the right of said plaintiff to attack the order of the county judge for want of jurisdiction. (*Davidsburgh* v. *L. Ins. Co.*, 90 N. Y. 526; *C. C. Bank* v. *Judson*, 8 id. 254; *Craig* v. *Andes*, 93 id. 405; *People* v. *Smith*, 55 id. 182; *Wellsborough* v. *R. R. Co.*, 76 id. 185.) The order was without jurisdiction, as also was

the judgment claimed to have been entered on such order, and both are void. (*People* v. *Sawyer*, 52 N. Y. 296; Code Civ. Pro. §§ 1200, 1236, 1237, 1239; *P. R. Co.* v. *Thatcher*, 6 How. Pr. 1260; *Blansfield* v. *Smith*, 27 Hun, 114; *Kopp* v. *Roche*, 82 N. Y. 366.) The bonding act was purely statutory, contemplated but one petition to contain the relief desired, and must in every essential particular comply with the provisions of law. In this instance there were violations which render either one or both of the petitions void. (*People* v. *Spencer*, 55 N. Y. 1, 4, 135; *Wellsborough* v. *R. R. Co.*, 76 id. 182; *People* v. *Batchelor*, 53 id. 128; *Horton* v. *Town of Tompkins*, 71 id. 513; *People* v. *Hurlburt*, 46 id. 110; *People* v. *Knowles*, 47 id. 415; *Angel* v. *Town of Hume*, 17 Hun, 374.) The second petition has no standing in these proceedings, and the whole case rests upon the first petition, which shows that, in any event, there was an over issue of $19,000. (Code Civ. Pro. § 1200.) The contracts being void, they could infuse no vitality into the bonding proceedings; all proceedings fell and were null and void ere the bonds left the hands of Clement, as the condition precedent was not performed until after the amendment was of full force. The amendment vitiated the bonding act and all uncompleted proceedings thereunder had. (*Butler* v. *Palmer*, 1 Hill, 324; Sedg. on Stat. 129, 136.) As between the town and railroad company, and all persons cognizant of the facts, at least, these obligations were utterly void, being no better than forged paper. (*Craig* v. *Town of Hancock*, 94 N. Y. 532; *Horton* v. *Thompson*, 71 id. 513; *Town of Wellsborough* v. *R. R. Co.*, 37 Hun, 182; *Craig* v. *Town of Andes*, 93 N. Y. 405; *Alvord* v. *S. S. Bank*, 98 id. 599; *Town of Colona* v. *Evens*, 92 U. S. 92; *N. Bank* v. *Horte Town*, 110 id. 110.) The only other defense presented is, that by payment of interest on these bonds, the plaintiff is estopped from denying them. This is untenable. (*Thompson* v. *Town of Mamakating*, 37 Hun, 400; *Weimer* v. *Town of Douglas*, 64 N. Y. 91; *Thomas* v. *City of Richmond*, 12 Wall. 349; 20 id. 655; *Wellman* v. *Flack*, 96 N. Y. 512; *Hodges* v. *Buffalo*, 2 Den. 454; *Springer* v. *Bank*, 10 Pet. 257; *Grant* v. *V. C.*

*Co.*, 93 U. S. 326; *Ketchum* v. *Duncan*, 96 id. 659, 716; *Steele* v. *Smelting*, 106 id. 447; *Dickerson* v. *Colgrove*, 100 id. 576; *McHenry* v. *Hazzard*, 45 N. Y. 586; *Town of Springport* v. *T. S. Bank*, 75 id. 397; *Scott* v. *Onderlook*, 14 id. 9; *Moores* v. *Tondshed*, 102 id. 387; *Bokes* v. *Lansing*, 74 id. 437; Laws of 1871, chap. 925; *Craig* v. *Town of Andes*, 93 N. Y. 405.) Defendant has no right to urge that plaintiff has its remedy at law and must take it when sued on the bonds, for such a defense is nowhere pleaded. (*Pam* v. *Vilmore*, 54 How. Pr. 235; *Truscott* v. *King*, 6 N. Y. 147.) Material allegations not denied, are taken as true. (10 N. Y. S. R. 160; 21 How. Pr. 349; Code Civ. Pro. § 522.) This action was properly authorized by and prosecuted in the name of the town. (1 R. S. [7th ed.] 810, § 7.)

*Adelbert Moot* for respondents. The bonds of Cherry Creek are valid bonds. (Laws of 1869, chap. 90; Laws of 1870, chap. 507; Laws of 1871, chap. 925; *Holyoke* v. *Holyoke*, 5 Pick. 24; *Keene* v. *Paul*, 14 Pet. 39; *Griffeth* v. *Frazer*, 8 Cranch, 24; 2 Redf. on Wills, 109; *Bigelow* v. *Bigelow*, 4 Ohio, 138; *Kiteridge* v. *Folsom*, 8 N. H. 28; *Brock* v. *Frank*, 51 Ala. 91; *Roderigas* v. *E. R. S. Inst.*, 63 N. Y. 460; Freeman on Void Judicial Sales, 20, § 4; *Collins* v. *Bennett*, 46 N. Y. 490, 496; *Hallock* v. *Donning*, 69 id. 238; *Wimberly* v. *Hurst*, 33 Ill. 166; *Feaster* v. *Fleming*, 56 id. 457; *Cloud* v. *E. D. Co.*, 12 Cal. 128; *Ex parte Watkins*, 3 Pet. 193; *Preston* v. *Clark*, 9 Geo. 246; *Blakely* v. *Calder*, 1 Smith, 621; *B. & W. R. R. Co.* v. *Sparhawk*, 1 Allen, 448; *Cailleteau* v. *Ingouf*, 14 La. Ann. 623; *Balgiano* v. *Cooke*, 19 Md. 375; *Savage* v. *Hussey*, 3 Jones [N. C.] 159; *Hathaway* v. *Hemmingway*, 20 Conn. 190; *Flemning* v. *Johnson*, 26 Ala. 421; *Chase* v. *Christianson*, 41 Cal. 253; 4 Kent's Comm. 454; *Wheelright* v. *Wheelright*, 2 Mass. 446; *Bank of Rome* v. *Village of Rome*, 19 N. Y. 20; *Gagnin* v. *Town of Hancock*, 84 id. 540; *State of Illinois* v. *Delafield*, 8 Paige, 527; 2 Hill, 159, 177; *M. Bank* v. *N. H. R. R. Co.*, 3 Beem. 625, 627; *Fisher* v. *M. C. Co.*, 3 Am. L. Reg. 423; *Town of*

*Venice* v. *Woodruff*, 62 N. Y. 562; *Fulconer Case*, .103 U.
S. 821; *Town of Concord* v. *S. Bank*, 92 id. 625; *County of
Moultrie* v. *S. Bank*, 92 N. Y. 631; *County of Callo-
way* v. *Foster*, 93 id. 567; *Howard County* v. *Paddock*,
110 id. 384; *Louisiana* v. *Taylor*, 105 id. 457; *County of
Scotland* v. *Thomas*, 94 id. 682; *County of Henry* v. *Nicolay*,
95 id. 619; *County of Roy* v. *Vansych*, 96 id. 675; *County
of Schuyler* v. *Thomas*, 98 id. 169; *County of Cass* v. *Gillett*,
100 id. 585; *Montclair* v. *Ramsdell*, 107 id. 158; *Goodman*
v. *Simonds*, 20 How. Pr. 343; *Murray* v. *Lardner*, 2 Wall.
110; *Shaw* v. *R. R. Co.*, 101 U. S. 557; *Swift* v. *Smith*,
102 id. 442; *Pompton* v. *Cooper Union*, 101 id. 196; *Mercer
County* v. *Hackett*, 1 id. 183; *San Antonio* v. *Mehaffy*, 96
id. 312; *County of Moultrie* v. *Savings Bank*, 92 id. 631;
*Moran* v. *Miami County*, 2 Black, 722; *Knox* v. *Aspinwall*,
21 How. [U. S.] 559; *R. B. Bank* v. *Turzuand*, 6 El.
& Bl. 325.) The plaintiff is estopped from denying that
the bonds in question are valid bonds. (Waite on Fraud.
Conv. § 495; *Robbins* v. *Robbins*, 89 N. Y. 251, 253; *Alvord*
v. *S. S. Bank*, 98 id. 603; *Town of Venice* v. *Woodruff*,
62 N. Y. 462; *Town of Springport* v. *S. Bank*, 75 id.
397.) If the bonds are not valid then the town has a
good defense to them at law and cannot resort to equity for
their cancellation. (*Wheelock* v. *Noonan*, 108 N. Y. 179,
183, 184.) The complaint must be dismissed for want of
proper parties defendant. (*Osterhoudt* v. *Bd. Suprs.*, 98 N.
Y. 239; Code Civ. Pro. §§ 452, 499.) Plaintiff presents
no valid exception which entitles it to a new trial. (*Apthorp*
v. *Comstock*, 2 Paige, 482; *King* v. *Whaley*, 59 Barb. 71;
*In re N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 347.)

O'BRIEN, J.    It is not seriously claimed in behalf of the
town that any of the material facts found by the trial court
and approved by the General Term are unsupported by evi-
dence. The review in this court must, therefore, be confined
to the question whether, upon the facts found by the Special
Term, the judgment dismissing the complaint was correct.

The action was brought by the plaintiff, one of the towns of Chautauqua county, to set aside and declare canceled certain bonds of the town issued in aid of a railroad. The Buffalo and Jamestown Railroad Company was duly incorporated prior to April 1, 1872, to construct a railroad from the city of Buffalo to a point on the line that divides the states of New York and Pennsylvania, and about twelve miles west of Jamestown. As the route of the road was to pass through the town of Cherry Creek, proceedings were instituted by certain of its citizens and tax-payers to authorize the issue of its bonds to aid in construction, under the provisions of law then existing, empowering towns to issue their bonds in aid of railroads. (Laws of 1869, chap. 907, as amended by Laws of 1871, chap. 925.)

On the 15th of June, 1872, a petition in the form prescribed by the first section of the act, signed by the tax-payers of the town, and purporting on its face and held by the trial court to be a majority of such tax-payers, was presented to the county judge of the county, praying that the town create and issue its bonds to the amount of $25,000, and invest the same, or the proceeds thereof, in the stock of said railroad, upon such terms and conditions as should be agreed between the company and the commissioners in behalf of the town. It was provided in the petition that such bonds issue on the condition that the road be constructed through the town, as follows: $5,000 when the road was located through the town, $10,000 when the road was graded through the town, and the remaining $10,000 when the road was completed. This petition was dated April 8, 1872. Another petition was also presented to the county judge the same day, bearing date April 26, 1872, purporting to be signed and, from the finding below, was actually signed by a majority of the tax-payers, as required by the statute, praying that the town create and issue additional bonds in the amount of $19,000, in aid of said railroad. The county judge directed the publication of notice, to whom it might concern, as required by the statute, and that cause be shown before him at a time and place specified why the prayer of the petitions should not be granted. On the 11th day of July,

1872, the day named in the notice, the county judge proceeded to take proof as to the facts stated in each of the petitions, and on the same day rendered judgment thereon, which recites the presentation of the petitions, the substance of their contents, the order directing the publication of notice and proof of the publication thereof, the appearance of the petitioners, the hearing and proofs before him, from which it appeared that each of the petitions contained the names of a majority of the taxpayers representing a majority of the taxable property of the town, as shown by the preceding tax-list and assessment-roll of the town. The judgment then concluded as follows: "Now, therefore, I do adjudge and determine that the said petitioners in each of said petitions do represent a majority of the tax-payers of said town of Cherry Creek, as shown by the last-preceding tax-list and assessment-roll of said town, and that the petitioners in each of said petitions do represent a majority of the taxable property upon said last-preceding tax-list and assessment-roll of said town." Commissioners were named and the judgment-roll filed in the county clerk's office July 15, 1872. On August 9, 1872, the railroad and the commissioners agreed in writing that when the road was located and constructed through the town ready for the rolling stock, the town would subscribe to the capital stock and the road issue its stock to the town in the sum of $44,000, and the town would issue and deliver to the railroad its bonds for a like amount, bearing date as of the time of the subscription, at seven per cent interest, payable semi-annually. Upon the faith of this agreement and the proceedings for bonding, the line of the railroad was located through the town in October, 1872. On the 26th of August, 1874, the commissioners, in behalf of the town, subscribed for the stock and executed and delivered the bonds, amounting to $44,000, to a third party in escrow, to be delivered to the railroad upon completion of the road through the town, according to the terms of the petition, and the railroad, on the same day, issued and delivered $44,000 of its stock to the same person, and in like way to be delivered to the town in return for the bonds. The railroad commenced

the construction of the road through the town about August, 1874, and completed it on or about April 1, 1875, on which date the stock was delivered to the commissioners by the party in whose hands it had been placed, and the bonds to the railroad company, which sold or disposed of the same. The commissioners reported these transactions to the tax-payers, and the town regularly paid the interest on the bonds as it came due until July 1, 1881, when the first default in the payment of interest was made. The railroad was being operated through the town at the commencement of the action, and had been assessed in the town each year up to the trial in the sum of $60,000 or upwards. In August, 1875, the defendant Becker became the owner of $5,000 of the bonds without notice of any defense to them, and for value, and the other bonds were owned by parties who were not served in the suit. The trial court held, as matter of law, upon the facts, that the bonds were valid; that the defendant Becker was a *bona fide* holder, and dismissed the complaint on the merits. Much of the argument in support of this appeal is directed to the proceedings before the county judge, and to proving that the adjudication made by him and above set forth, that the requisite number of tax-payers, representing the requisite amount of taxable property, had executed the consents, was and is irregular and erroneous. In the view that we are constrained to take of the case, it is unnecessary to examine the various questions bearing on that point raised and discussed by the learned counsel for the plaintiff. All of these questions could have been properly raised in a direct proceeding to review the determination of the county judge by certiorari, but they cannot be considered upon this appeal. If the county judge had jurisdiction to make the determination, then, so long as it has not been reversed for error or set aside for irregularity, the judgment rendered by him is conclusive in this case. We cannot see that his jurisdiction was at all impaired because the judgment rendered was based upon two separate and distinct petitions instead of one, so long as the aggregate amount of bonds to be created was not to exceed the statutory limit of twenty per cent of the total

assessed valuation of the taxable property of the town, as shown by the last preceding assessment-roll. The county judge had before him both petitions, containing the statements and allegations prescribed by the statute, duly verified, and proof that the process or notice required under the statute to give jurisdiction had been properly served or published, and he then, at the time and place named in the notice, proceeded to take proofs touching the truth of the matters alleged in the petition, and adjudged that the papers before him contained the consent of a sufficient number of tax-payers, and representing the requisite amount of taxable property in the town. If a distinct and separate judgment should have been rendered upon each petition, that was, at most, an error or irregularity to be corrected by review or by motion. We cannot doubt that the county judge had jurisdiction to hear and determine the matter before him involved in the petition, and, having such jurisdiction, it is a settled principle that his judgment, until reversed or set aside, cannot be questioned or attacked collaterally in another action. (*Roderigas* v. *E. R. S. Inst.*, 63 N. Y. 460; *Collins* v. *Bennett,* 46 id. 490; *Hallock* v. *Dominy*, 69 id. 238; *Lange* v. *Benedict*, 73 id. 12. Freem. on Judg. § 135.)

The commissioners representing the town, and deriving their authority from the judgment and the statute, had power, therefore, to create and issue the bonds unless the statute, which alone conferred the power, was itself abrogated by the amendments to the State Constitution. Section 11 of article 8 of the Constitution, which went into effect on the 1st day of January, 1875, provides that "no county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes." The bonds were actually delivered to the railroad company subsequent to the date when this constitutional prohibition went into effect.

By chapter 507 of the Laws of 1870, the commissioners of the town and the railroad company are authorized "to enter into any agreement concerning the issue of said bonds, limiting and defining the times when and the proportion in which said bonds, or their proceeds, shall be delivered to said corporation, and the place or places where, and the purpose for which, such bonds, or their proceeds, shall be applied or used, and any such agreement in writing, duly executed by said corporation and the majority of such commissioners, shall in all courts and places be valid and effectual." The commissioners and the railroad company agreed in writing, in conformity with this statute, on the 9th of August, 1872, that when the railroad was finally located and constructed through the town, that the commissioners would then subscribe for the stock; that the company would deliver the same to them, and that they would issue and deliver the bonds, to the amount of $44,000, to the company. This was a valid, binding contract upon both parties, and the town became thereby obligated to deliver the bonds upon the completion of the road, thereby securing better terms from the railroad than provided in the conditions embraced in the petition containing the consents to create the bonds. The subsequent agreement, also in writing, of August 26, 1874, between the commissioners and the company, providing for the deposit of the stock and bonds in escrow, to be finally delivered upon performance by the company of the agreement of August 9, 1872, that is, upon the completion of the road through the town, modified the first agreement in some particulars, but was within the general powers of the commissioners, so that when the amendment to the Constitution went into effect, the bonds had been signed and delivered in escrow under the terms of a valid contract, upon the faith of which the railroad company acted, when it built the road through the town. The obligations of an existing contract can no more be impaired by an amendment to the Constitution of a state than by an act of the legislature. It is not to be supposed that the amendment was intended to apply to such a case, even if we were obliged to hold that no delivery of the bonds by

the town to the railroad was made till after the amendment went into effect. But for the purposes of justice and the protection of parties acquiring title to the bonds in good faith, it might well be held that the delivery to the railroad related back to August, 1874, when they were deposited in escrow. (*Frost* v. *Beekman*, 1 Johns. Ch. 288; 4 Kent's Comm. 454.)

The case of *Falconer* v. *B. & J. R. R. Co.* (69 N. Y. 491), is clearly distinguishable from this in several important particulars.

1. In that case the right and power to issue or deliver bonds was restricted by a condition in the petition containing the consent which, in effect, provided that they should not be issued or delivered until the railroad was constructed through the village of Jamestown.

2. It was admitted in that case that prior to January 1, 1875, the railroad had not been constructed through the village, nor had the power to issue bonds and subscribe for stock been exercised by the commissioners, as it could not be by reason of these conditions. Therefore, when the amendment went into effect, nothing had been done, and the constitutional amendment abrogated and swept away all power to create bonds conferred by the statute.

3. That was an action between the town, or tax-payers representing the town, on the one hand, and the railroad company on the other, for the purpose of restraining and preventing the issue of the bonds in the future, and not like this, where the town seeks to cancel its bonds lawfully issued before the amendment went into effect, in the hands of a *bona fide* holder. The railroad has not been constructed from Jamestown west to the Pennsylvania line, a distance of about twelve miles, and hence it is urged by the counsel for the plaintiff that the condition contained in the first petition providing for the issue of the last $10,000 of the bonds to be created under that petition upon the completion of the road, renders the contract made by the commissioners to deliver the bonds when the road was constructed through the town, unauthorized and void. We are

inclined to think that the completion of the road through the town of Cherry Creek, or from Buffalo to Jamestown, was a substantial compliance with all that was intended by this condition, but if the condition fairly included in its language the additional twelve miles we think such a departure from it as is shown in this case would not invalidate the bonds in the hands of a *bona fide* holder. The statute under which the bonds were issued provides that non-compliance with any condition inserted in the petition shall not in any manner invalidate the bonds. (Laws of 1871, chap. 925, § 1.)

We see no ground upon which it can be maintained that the bonds in question were created without legal authority, and in our opinion they are valid; but if the plaintiff's counsel could establish their invalidity on any of the grounds urged upon the argument, he would then be confronted with another question that is fatal to the right to maintain this action. The plaintiff has invoked the power of a court of equity to cancel its own obligations, upon which it has paid interest for six years prior to the commencement of this action. The action of the commissioners in creating the bonds was reported to the town and no question was raised as to their validity until years after and when they had come to the hands of parties who were ignorant of any defect in the proceedings under which they were issued. It must now be regarded as the settled rule that a court of equity will not interfere in such a case to cancel or set aside bonds issued and purchased under such circumstances, but will leave the town to its remedy by defense at law. (*Calhoun* v. *Millard*, 121 N. Y. 96; *Alvord* v. *Syracuse Savings Bank*, 98 id. 603.)

For these reasons the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.