### KEENE FIVE-CENT SAV. BANK v. LYON COUNTY.

(Circuit Court, N. D. Iowa, W. D.   November 1, 1899.)

1. MUNICIPAL BONDS—EXCEEDING LIMIT OF INDEBTEDNESS—INNOCENT PURCHASER.

Where an issue of negotiable bonds by a county does not in itself exceed the limit of indebtedness which the county can legally contract, and the bonds recite that they are issued for the purpose of funding outstanding indebtedness of the county, and also recite the statutes under which they are issued, and which authorize their issuance for such purpose, there is nothing on the face of such bonds to charge a purchaser with notice that their issuance will increase the indebtedness of the county beyond the constitutional limit, and one purchasing such bonds in good faith from the county, for full value, is an innocent purchaser, entitled to rely on the recitals therein, and to enforce them against the county, at least to the amount for which the county could legally contract indebtedness at the time of their issuance.

2. SAME—COMPUTING OUTSTANDING INDEBTEDNESS.

In an action against a county on its negotiable bonds issued for the purpose of funding outstanding indebtedness, where the defendant introduces evidence showing that warrants which were outstanding when the bonds were issued, and which were paid from the proceeds of such bonds, were illegal and nonenforceable against the county, the amount of such warrants cannot be considered in determining the existing indebtedness of the county when the bonds were issued.[1]

3. SAME.

Where a county issues negotiable bonds under statutory authority, for the purpose of funding its outstanding indebtedness, and sells them to an innocent purchaser for full value, it cannot impeach the validity of such bonds by showing that its officers used the proceeds in the payment of warrants which were invalid, and not enforceable.

This was an action on funding bonds issued by defendant county. A jury trial having been waived, the evidence was submitted to the court, and the facts found to be as follows:

(1) Plaintiff, the Keene Five-Cent Savings Bank, was when this action was brought, and is now, a corporation created under the laws of the state of New Hampshire; and the defendant county was when the suit was brought, and is now, a corporation created under the laws of the state of Iowa, the county being organized in January, 1872.

(2) The first state and county tax lists for the county were those for the year 1872, and the amounts of the taxable property within the defendant

---

county, as shown by the state and county tax lists for the various years since organization, were as follows, exclusive of amounts allowed as exemption under the tree culture acts, to wit:

For the year 1872 ........................................ $ 499,099 96
"    "    "    1873 ........................................ 1,009,444 56
"    "    "    1874 ........................................ 997,822 62
"    "    "    1875 ........................................ 1,061,806 63
"    "    "    1876 ........................................ 1,081,356 09
"    "    "    1877 ........................................ 885,262 80
"    "    "    1878 ........................................ 889,757 85
"    "    "    1879 ........................................ 915,133 28
"    "    "    1880 ........................................ 1,066,707 00
"    "    "    1881 ........................................ 978,259 00
"    "    "    1882 ........................................ 989,550 00
"    "    "    1883 ........................................ 1,384,289 00
"    "    "    1884 ........................................ 1,437,527 00
"    "    "    1885 ........................................ 1,558,043 00

(3) It is further found that the exemptions under the timber culture acts of the state of Iowa, on assessments against property owners in Lyon county, as shown by the state and county tax lists for Lyon county, Iowa, were for the year 1879, and for the various years since, as follows:

For the year 1879 ........................................ $ 75,218 80
"    "    "    1880 ........................................ 171,551 00
"    "    "    1881 ........................................ 171,514 00
"    "    "    1882 ........................................ 175,547 00
"    "    "    1883 ........................................ 177,182 00
"    "    "    1884 ........................................ 143,208 00
"    "    "    1885 ........................................ 160,135 00

The tax lists of said Lyon county, Iowa, for the years 1879 to 1885, inclusive, were made up as follows: First column, name of owners; second column, part of section, name of town; third column, section, lot; fourth column, township or block: fifth column, number of acres; sixth column, value of land or town lot; seventh column, value of personalty; eighth column, exemptions for trees under state law; ninth column, total value for taxation; and the property assessed for taxation was entered upon the books by entering under the proper columns the name of the owner, the description of land or lot, the value of the personalty, and under column 8 the amount of exemptions for trees under the state laws, and under the ninth column the total value for taxation as shown by columns 6 and 7, after deducting the amount entered under column 8.

(4) From the 18th day of July, 1872, to the 28th day of July, 1873, there were issued by the defendant county $55,000 of judgment bonds for the purpose of paying judgments aggregating $55,000 which had been rendered against said county, which said judgments are set out in paragraph 4 of the findings of the court in the case of Ætna Life Ins. Co. v. Lyon Co. (C. C.) 44 Fed. 329.

(5) That from July 28, 1873, up to July 1, 1879, funding bonds were issued by the defendant county, under the provisions of chapter 1 of title 4 of the Code of Iowa for 1873, as amended by chapter 9 of the Acts of the 15th General Assembly, and chapter 154 of the Acts of the 17th General Assembly, at various dates, and in amounts as follows:

October 19, 1874 ................................................. $10,000
December 1, 1874 ................................................. 6,000
February 16, 1875 ................................................ 1,000
September 18, 1875 ............................................... 5,100
October 18, 1875 ................................................. 200
November 9, 1875 ................................................. 400
September 6, 1876 ................................................ 20,000
July 7, 1877 ..................................................... 3,600
February 7, 1878 ................................................. 1,000
June 4, 1878 ..................................................... 5,200
February 19, 1879 ................................................ 1,400
June 4, 1879 ..................................................... 1,400
                                                                  ———————
       Total ..................................................... $55,300

(6) July 1, 1879, the defendant county issued $100,000 of 4 per cent. refunding bonds, under the provisions of chapter 58 of the Acts of the 17th General Assembly of the State of Iowa, and upon the following resolutions of the board of supervisors of said county, of date April 3, 1878: "Whereas, in accordance with an act of the seventeenth general assembly of the state of Iowa, authorizing counties, cities, and towns to refund outstanding bonded indebtedness at a lower rate of interest, and to provide for the payment thereof, the board of supervisors of Lyon county, Iowa, in regular session assembled, deem it for the public interest to refund all indebtedness of said county, evidenced by the bonds thereof heretofore issued and outstanding at the time of the passage of this act: Therefore, be it resolved by said board of supervisors that the chairman of said board and the auditor of said county are hereby authorized and empowered to issue the coupon bonds of said county in sums not less than one hundred dollars ($100), nor more than one thousand dollars ($1,000), having not more than fifteen years to run, redeemable in lawful money of the United States of America, at the pleasure of the said county of Lyon, after five years from the date of issue, and bearing interest payable semiannually at the rate of 8 per centum (8%) per annum, which bonds shall be substantially in the forms set forth in said bill, to wit, from lines eleven to twenty-nine, inclusive, and deliver the same to J. Shade, treasurer of the said Lyon county, Iowa, who is hereby authorized to sell and dispose of said bonds so issued, in accordance of said act of the seventeenth general assembly of the state of Iowa, and for no other purpose whatever. It is further resolved by the board of supervisors of said Lyon county, Iowa, that two per centum (2%) be, and the same is hereby, appropriated, of the bonds herein authorized to be issued, to pay the cost or expenses of preparing, issuing, advertising, and disposing of the same, and that J. Shade is hereby employed as financial agent thereof, with power to employ an assistant, if he so desire, and that all matters herein set forth shall be done in strict conformity with this resolution and the provision of said act. The foregoing was approved by all the members of the board of supervisors of Lyon county, Iowa."

(7) The foregoing resolution was spread upon the records, and is upon page 387 of Book A of the records of the proceedings of the board of supervisors of said county; and the proceeds of this issue of the Shade refunding bonds, amounting to $100,000, were used to pay the principal and interest of bonds issued prior thereto, as follows: The amount of $53,500 thereof was used to pay in full all of the $55,000 of judgment bonds heretofore referred to, and which were issued in 1872 and 1873, and which were outstanding and unpaid, being in amount $53,000 of principal and $500 of interest, including the whole of $6,800 issued upon the judgment in favor of C. A. Greely, and which was reversed in the supreme court of the state of Iowa. The remainder of the proceeds arising from the sale of the Shade refunding bonds of $100,000, issued July 1, 1879, was used to pay said above-mentioned $47,300 of funding bonds not issued upon or to pay judgments, with accrued interest thereon amounting to $1,085, hereinbefore referred to as being issued between October 19, 1874, and February 7, 1878, both dates inclusive, as set forth in finding No. 5.

(8) The following additional judgments were entered against the defendant, Lyon county, at the dates and in the amounts named, to wit:

| | |
|---|---:|
| E. T. Kirk, July 24, 1873 | $2,204 23 |
| James H. Wagner, April 21, 1874 | 672 06 |
| A. J. Harmon. April 21, 1874 | 381 42 |
| Perkins Bros., August 22, 1874 | 315 05 |
| Wilson and Van Suan & Co., May 3, 1875 | 3,850 34 |
| Lyman J. Gage, October 17, 1875 | 4,460 56 |
| C. H. Smith, November 15, 1876 | 233 00 |
| E. T. Drake, May 14, 1878 | 603 00 |
| A. H. Andrews & Co., May 14, 1878 | 167 45 |
| Swan & Fawcett, May 14, 1878 | 603 00 |
| T. C. Thompson, May 14, 1873 | 304 00 |
| Chase & Taylor, May 14, 1878 | 479 10 |

—Which said judgments were satisfied prior to the 1st day of July, 1879, either by the issuance of the bonds set out in paragraph 5, or the proceeds of their

sale, or warrants or cash derived from other sources, and that no judgments were rendered against said county after May 14, 1878.

(9) The next bonds issued by the defendant county were issued on January 8, 1880; and that on said date, and at various dates subsequent thereto, up to and including July 1, 1885, there were issued $60,600 of funding bonds under the provisions of chapter 1, tit. 4, Code 1873; chapter 9, Acts 15th Gen. Assem.; chapter 125, Acts 16th Gen. Assem.; chapter 154, Acts 17th Gen. Assem.; chapter 183, Acts 18th Gen. Assem.; chapter 147, Acts 19th Gen. Assem.; chapter 80, Acts 20th Gen. Assem.,—at dates and in amounts as follows:

| | |
|---|---:|
| January 8, 1880 | $    600 |
| May 12, 1880 | 11,600 |
| June 1, 1880 | 6,800 |
| November 12, 1880 | 2,400 |
| September 6, 1881 | 4,000 |
| June 13, 1882 | 9,000 |
| September 1, 1884 | 3,100 |
| March 1, 1885 | 3,100 |
| July 1, 1885 | 20,000 |
| | $60,600 |

(10) That the whole amount of said bonds was issued for the purpose of taking up outstanding floating warrants against said county, and on the date of the issuance of the last $3,100 there were outstanding county warrants, not funded into the issue of March 1, 1885, in the sum of $26,366.

(11) On May 1, 1885, an issue of $120,000 of refunding bonds was made by the defendant county, under the provisions of chapter 58 of the Acts of the 17th General Assembly, and chapter 175 of the Acts of the 20th General Assembly, of the State of Iowa, and under a resolution of the board of supervisors of said county of date April 11, 1884, as follows:

"Whereas, it is deemed to be for the public interest to refund the indebtedness of the county of Lyon, state of Iowa, evidenced by the bonds thereof heretofore issued and outstanding on the 1st day of January, 1884, and to issue the coupon bonds of county: It is therefore resolved, by the board of supervisors of said county in session assembled, to issue coupon bonds of this county in sums of not less than one hundred dollars, nor more than one thousand dollars, having not more than twenty years to run, redeemable in lawful money of the United States of America, at the pleasure of the county, after five years from the date thereof, and bearing interest, payable semiannually, at 6 per cent. per annum, which bonds shall be substantially in the form given in section 1, c. 58, Acts 17th Gen. Assem., and shall bear date of July 1, 1885, or on the 1st day of any month called for by Miller & Thompson; and the chairman of the board and the auditor of this board and the auditor of the county are hereby directed to issue same, in accordance with said statute and this resolution.

"In testimony whereof the said county, by its board of supervisors, has caused this bond to be signed by the chairman of the board, and attested by the auditor, with the county seal attached, this 1st day of May, 1885.

"[Seal.]          J. G. Anderson, Chairman of the Board of Supervisors.
"T. C. Thompson, County Auditor."

(12) The issue of $120,000 of bonds of defendant county bearing date May 1, 1885, were of denominations of $1,000 each, and were sold at the dates, in the amounts, and of the numbers, and to the persons or corporations, as follows, to wit: June 1, 1885, Nos. 01 to 027, to G. B. Provost; June 4, 1885, Nos. 048 to 052, to C. H. Eighmey; June 6, 1885, Nos. 053 to 055, to Dubuque National Bank; August 28, 1885, Nos. 056 to 090, to Ætna Life Insurance Company; September 1, 1884, Nos. 091 to 095, to United States National Bank; September 1, 1885, Nos. 096 to 0105, to Orient Fire Insurance Company; September 2, 1885, Nos. 0106 to 0110, to Connecticut Life Insurance Company; September 8, Nos. 028 to 047, to Savings & Trust Company of Cleveland, Ohio; September 20, 1885, Nos. 0111 to 0120, to Hartford Steam-Boiler Inspection & Insurance Company.

(13) The proceeds of the $120,000 issuance of bonds of said county, dated May 1, 1885, were used to pay off and take up the $100,000 issue of bonds of July 1, 1879, and unpaid interest thereon, and the balance to take up funding bonds of said county outstanding at the date of the issue of the said $120,000 of bonds, and the commission for the placing of said $120,000 for sale, amounting to $2,438.59.

(14) No other bonds were issued by the defendant county than as set out in this finding of facts. All of the bonds issued by said county prior to the date of the issuance of the bonds in suit were outstanding and unpaid at the time of the issuance of the bonds in suit, except $20,000 of the July 1, 1879, issue, and except as shown by the facts in evidence.

(15) The $100,000 of bonds issued July 1, 1879, were in denominations of $500 and $1,000 each, and bore interest at the rate of 8 per cent., payable semi-annually, evidenced by coupons attached to said bonds, and said interest was regularly paid by the said defendant county at its maturity, from the issuance of said bonds up to the date said bonds were taken up and paid off.

(16) The defendant county for each year, from the time of its organization up to and including the year 1886, levied a tax, under the name of "Bond and Interest Fund," upon the taxable property of the said county; and from the fund derived from said taxation the said county regularly paid the interest upon all of the bonds issued by it up to the 11th day of May, 1887, except that part of the interest on bonds which was paid from the money derived from the sale of bonds, amounting to $661.41 of the $100,000 issue, and $1,585 of the bonds of said county issued prior to the $100,000 issue.

(17) Portions of the several amounts of warrants drawn and outstanding in the years 1880 to 1885, both inclusive, were paid from the funds in the county treasury derived from the taxes of these years.

(18) Of the bonds issued in 1878 and 1879 there were paid and canceled, prior to June 18, 1882, $2,400, and prior to September 1, 1884, the amount of $4,300.

(19) The resolution of the county board of April 10, 1884, reads as follows: "Whereas, the county of Lyon, in the state of Iowa, has a floating indebtedness in warrants on the different funds in said county; and whereas, the said board of supervisors deem it to the best interests of the county to bond the same: Therefore be it resolved, by the board of supervisors of Lyon county, Iowa, that the chairman, with the auditor, be authorized to issue bonds in amounts sufficient to cover said indebtedness, and deliver the same to the county treasurer, and take his receipt therefor.

(20) The said county of Lyon kept among its other books a warrant record, which record was headed, "Treasurer's Warrant Record," and upon which paid warrants were entered in columns under the following heads, "No. of Warrant," "Date of Warrant," "To Whom Drawn," "When Paid," "Original Amounts," "Interest," "Total;" and on said warrant record, on pages 274, 275, 276, 277, 279, and 280, are shown $16,637.76 of warrants paid from September 19, 1885, to October 20, 1885,—the beginning of heading on page 274 reading, in writing, as follows: "Warrants bonded from Sept. 19, 1885, to Oct. 2, 1885. John G. Watkins, Treasurer;" all of the payments upon said warrant record upon said pages 274 to 280, inclusive, being under date of September 19, 1885.

(21) That in each of the years 1879 to 1884, both inclusive, there was regularly levied and collected taxes, upon the taxable property of defendant county, six mills for county fund, three mills for bridge fund, and in the year 1884 there was also levied and collected one mill for poor fund.

(22) That the bonds in suit were sold by B. L. Richards, acting for the county treasurer of defendant county, to the plaintiff company, on the 3d day of September, 1885, and the money derived from the sale thereof was turned over by said Richards to the said county treasurer on the 21st day of September, 1885.

(23) That on the 1st day of July, 1885, and prior to the issuance of the bonds in suit, and at the date of the sale of said bonds, there were outstanding and unpaid warrants of said county to the amount of $19,765.64, of which amount $16,662.01 were paid by the county treasurer from the money realized from the sale of the bonds to the plaintiff company; it being claimed by the

defendant that the warrants thus paid were mainly issued in the year 1882, and were invalid and void, having been issued in contravention of the constitutional limitation, and the court so finds the fact to be.

(24) That, when the bonds sued on were issued and sold to the plaintiff company, the valid outstanding indebtedness of the county was as follows:

### Bonds.

| | | |
|---|---:|---:|
| The bonds of July 1, 1879, known as the "Shade Bonds," had been paid off from the proceeds of the issue of $120,000, dated May 1, 1885; of the latter issue it has been judicially determined that there is valid the sum of...................... | $33,936 | 75 |
| Of the funding bonds issued up to March 1, 1885, as set forth in finding No. 9, and amounting to $40,600, there had been paid $16,900, leaving balance of............................... | 23,700 | 00 |
| Of the bonds issued between June 4, 1875, and June 5, 1879, as set forth in finding 5, there remained unpaid............... | 3,700 | 00 |
| Total ............................................. | $61,336 | 75 |

### Warrants.

| | | |
|---|---:|---:|
| The amount of warrants outstanding was $19,765.64, of which sum $16,662.01 were invalid and nonenforceable, leaving as valid the sum of........................................ | 3,103 | 63 |
| Total indebtedness..................................... | $64,440 | 38 |

J. M. Parsons, for plaintiff.

E. C. Roach, E. Y. Greenleaf, and Simon Fisher, for defendant.

SHIRAS, District Judge. The evidence in this case shows that the series of bonds issued by the defendant county, under date of July 1, 1885, and amounting to the sum of $20,000, were issued for the purpose of funding the then outstanding warrants of the county, and the bonds upon their face referred to the several acts of the general assembly of the state of Iowa, which conferred upon the county full authority to issue negotiable bonds for the purpose named. As the total amount of this series of bonds did not reach the 5 per cent. limitation imposed upon the power of the county to create indebtedness, there was nothing on the face of the bonds to charge the purchaser thereof with notice of any illegality therein, but, on the contrary, every presumption was in favor of their validity.

The evidence clearly shows that the plaintiff corporation bought the bonds for full value, in good faith, and is therefore entitled to recover thereon, unless the defendant county has sustained its defense that the bonds are invalid because of the limitation found in the constitution of the state of Iowa, restricting the indebtedness of municipal corporations to 5 per cent. upon the value of the taxable property within the municipal limits, as shown by the last preceding tax lists. The total valuation of the taxable property in the county for the year 1884 was the sum of $1,580,735, and the limit of the indebtedness was therefore the sum of $79,036.75 at the time the bonds in suit were issued.

The valid outstanding bonded indebtedness of the county at that time amounted to $61,640.75. There was then outstanding county warrants to the amount of $19,765.64, of which $16,662.01 were funded in the bonds sold to the plaintiff company. On behalf of

the defendant, it is contended that the evidence by it introduced proves that the warrants thus bonded were issued in 1882, and that they were themselves void, because they were issued in violation of the constitutional limit. If defendant's position in this particular is correct, it follows that in determining the amount of the indebtedness existing against the county when the bonds in suit were sold to plaintiff this amount of void warrants cannot be estimated, and therefore the amount thereof, to wit, $16,662.01, must be deducted from the total of outstanding warrants, to wit, $19,765.64, in order to ascertain the amount of the county indebtedness represented by valid warrants, which gives the sum of $3,103.63. Adding this amount to that of the valid bonds, and we have the sum of $64,440.38 as the total of the then valid outstanding indebtedness of the county, which would fall short of the 5 per cent. limitation in the sum of $14,596.37; or, in other words, at the time the bonds in suit were issued and sold to the plaintiff company, the county could lawfully create an additional indebtedness to that amount.

It is contended, on behalf of defendant, that, as the issue of bonds sold to plaintiff exceeded this amount, being the sum of $20,000, the whole issue must be treated as invalid and void, and that the court cannot recognize and enforce the contract of the county, evidenced by the bonds, up to the limit of the indebtedness that could be lawfully created. It must be remembered that the bonds in suit did not in themselves exceed the constitutional limit, but in fact they fall far short of the limit. The recitals in the bonds clearly pointed out the acts of the state legislature upon which they were based, and justified the purchaser in believing that they were issued for the purpose of refunding the outstanding obligations of the county,— a purpose for which there existed ample legislative authority. Upon the face of the bonds, therefore, there was nothing to show that they were invalid; and herein is an essential difference between the facts of this case and those existing in Doon Tp. v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220, the decision in which is the main reliance of defendant in this case. In that case, the series of bonds bought by Cummins in itself exceeded the limit of the debt-creating power of the township, and it was held that, as the purchaser was bound to know the limit fixed by the constitution and the amount of the taxable property within the township, he was charged with knowledge of the fact that the issue itself violated the constitutional provision, and he could not be held to be an innocent purchaser, and he could not rely upon any of the recitals in the bonds as evidence in his favor. In the case at bar, admitting that the plaintiff company was bound to know of the existence of the constitutional limit, and of the fact that the value of the taxable property in the county in the year 1884 amounted to $1,580,735, it follows that the plaintiff knew that the county had the legal right to create indebtedness up to the full sum of $79,036.75, and the offer to sell to it bonds in the sum of $20,000 only, would not charge the company with knowledge that the county was approaching or exceeding the constitutional limit. The plaintiff, having bought the bonds for full value, and in good faith, is now entitled to rely upon the recitals of

the bonds; and, as the total issue was far within the limit imposed upon the county by the constitutional provision, it follows that the plaintiff, having proved the due execution of the bonds, and the payment of value therefor, has made out a full and sufficient prima facie case against the county, and is therefore entitled to recover, unless the county has made out a good defense against the plaintiff's case. The defense relied upon is not that the county did not have full authority to issue negotiable bonds for the purpose of refunding its outstanding obligations, either by direct exchange at par, or by selling the bonds and applying the proceeds in payment of its obligations; for the acts of the general assembly confer full power so to do upon the county. The defense is not that the bonds in suit were not issued for refunding purposes, or that the plaintiff company did not pay full value therefor, or that the county did not receive the money paid for the bonds; so that the defense is not based in fact upon any matter arising out of the immediate transaction between the plaintiff company and the county, nor upon any illegality appearing on the face of the bonds, but is based upon the provision of the constitution limiting the amount of indebtedness creatable by municipal corporations; and to sustain this defense the burden is upon the county of proving the amount of the valid indebtedness existing against the county at the date of the issuance of the bonds. As the defendant itself maintains that the warrants which were funded in the bonds in suit, to the amount of $16,-662.01, were invalid and void, and has introduced evidence in support of its contention, the court is justified in holding that the defendant's contention in this particular is correct; and, this being the case, then it is clear that the county cannot assert that the void warrants represented an existing indebtedness that should be estimated in determining whether the county had reached the limit of indebtedness. But it may be argued that, as the evidence shows that the money realized from the sale of the bonds was in fact used in paying off the void warrants, the county in fact received no legal benefit or consideration therefor, and should not be held bound upon the bonds to any amount. Under the recitals in the bonds, the plaintiff company had the right to assume that the county would apply the proceeds realized from the bonds in the payment of valid indebtedness. If the county, after receiving the money from the plaintiff company, misapplied the same by paying off warrants which could not be enforced against the county, the plaintiff cannot be held responsible for such action on part of the county officials; nor would the payment of the void warrants, after the purchase of the bonds by the plaintiff company, give them validity at any date prior to that of the payment. Lyon Co. v. Ashuelot Nat. Bank of Keene, N. H., 30 C. C. A. 582, 82 Fed. 137. Furthermore, the very act that might be said to give them validity, to wit, payment thereof by the county, at the same moment discharged them as indebtedness against the county; for, being paid in money, that ended any liability therefor on part of the county. It thus appears that when the bonds in suit were issued the lawful indebtedness of the county amounted to the sum of $64,440.38, whereas the constitutional limit

would authorize the creation of indebtedness up to the sum of $70,036.75. The county, for a lawful purpose, issued and sold its bonds in the sum of $20,000, receiving full value therefor, and when sued thereon it defends by pleading the constitutional limit. The purpose of the limitation was not to enable municipal corporations to escape from the payment of just obligations, but solely to limit the burden of indebtedness which could be placed upon the taxable property of the municipality. The purpose of the constitutional limitation is fully met if a recovery in this class of cases is limited to the amount of indebtedness which could be lawfully created at the time of the issuance of the bonds, and no good reason exists why the plaintiff company is not entitled to recover for so much of the indebtedness as comes within the constitutional limitation. A rendition of judgment for that amount does not cause the indebtedness of the county to exceed the limit, and I see no more reason for refusing to enter judgment for the amount justly due than there would be for refusing to enter judgment in a suit upon a promissory note wherein the defense of a partial failure of consideration had been maintained.

In view of the rulings of the circuit court of appeals for this circuit in City of Huron v. Second Ward Sav. Bank, 30 C. C. A. 38, 86 Fed. 272, and of the supreme court in Board of Com'rs of Gunnison Co. v. E. H. Rollins & Sons, 173 U. S. 255, 19 Sup. Ct. 390, a plausible argument can be made to the effect that the recitals in the bonds sued on estop the county from asserting that the bonds, being issued to refund actual existing indebtedness, did in fact increase the county indebtedness, so as to come, either in whole or in part, within the constitutional inhibition; but as the bonds do not contain a positive statement that the county indebtedness, including the bonds issued, did not exceed the limit, I do not feel justified in holding that the county may not be heard to aver and prove the actual facts touching the amount of the county indebtedness; but I do hold that, as the evidence shows that when the bonds in suit were issued the county could lawfully increase its indebtedness by the sum of $14,596.37, the constitutional limitation is not infringed by holding the county liable for this amount upon the bonds sued on, and that the plaintiff company is entitled to judgment for this sum, with the interest thereon that has come due within 10 years before the bringing of this suit, the total sum being $29,242.33.