ADAM SCHMITZ v. ADAM ZEH.[1]

January 15, 1904.

Nos. 13,702—(154).

**Municipal Bonds—Estoppel of Taxpayers.**

In an action to enjoin the payment of certain municipal bonds issued under G. S. 1894, § 2771, to aid in the construction of a railroad, it appears that the bonds were issued by the municipal officers, being authorized to do so by vote of the people, delivered to the railway company, and by it

[1] Reported in 97 N. W. 1049.

sold and transferred to third persons, who were purchasers thereof in good faith and without notice of irregularities in their issue; taxes were for thirteen years thereafter annually levied and collected in payment of the interest as it accrued on the bonds, and the same promptly paid when due; plaintiff is, and has been for six years, a taxpayer of the municipality, and neither he nor any other taxpayer or other person ever questioned the validity of the bonds, but all acquiesced in their validity during the time stated. *Held*, that plaintiff and all other taxpayers are now estopped from questioning their validity, it not appearing that there was a total lack of power in the municipality to issue them.

**Excessive Issue—Validity.**

Bonds issued by municipalities in aid of the construction of a railroad under statutory power, though the amount thereof be in excess of the amount prescribed by statute, are void only to the extent of the excessive issue.

**Repeal of Act.**

Section 2771, G. S. 1894, was not repealed by the act incorporating the village of Red Lake Falls (Sp. Laws 1881, p. 253, c. 40).

Appeal by plaintiff from a judgment of the district court for Red Lake county, Watts, J., in favor of Anna W. Smith and James Bristol, intervenors. Affirmed.

*Chas. E. Boughton,* for appellant.

*Warner & Lawrence* and *Benj. W. Smith,* for respondents.

BROWN, J.

Action by a taxpayer of the city of Red Lake Falls to restrain and enjoin the auditor of Red Lake county from issuing warrants in payment of the interest due upon certain bonds, in which action Anna W. Smith and James Bristol intervened, claiming to be innocent purchasers of the bonds. The trial court ordered judgment for the intervenors, which was entered, and plaintiff appealed.

The facts are as follows: The village of Red Lake Falls was duly incorporated as a municipal corporation in 1881, under the provisions of chapter 40, p. 253, Sp. Laws of that year, and was reincorporated as a city under the provisions of chapter 8, p. 16, Laws 1895. On December 4, 1885, the Duluth & Manitoba Railway Company, a corporation duly organized and created under the laws of the state, being about to engage in the construction of a railroad to and through the said village, and desiring aid in the form of municipal bonds, presented

to the village under and pursuant to G. S. 1894, § 2771, et seq., the proposition therein provided for, containing, among other things, a statement of the amount of bonds desired by it, the time when payable, the rate of interest, the time when the bonds should be delivered with reference to the completion of the railroad, and fully complying with the statute in all respects. Upon filing the proposition with the village recorder, the village council duly called an election for the purpose of submitting to the people the question whether to accept the same and extend the solicited aid by issuing the bonds. The election was duly held on December 15, 1885, and a large majority of the voters cast their ballots in favor of the proposition. Thereafter, acting under the statute, and in pursuance of the power conferred thereby, and the authority given by the voters of the village, the council issued and delivered to the railway company nine bonds of $1,000 each, payable on or before the expiration of thirty years, with interest.

The proposition of the railway company requested an issue of $10,-000 in bonds, but, for the reason that that amount would exceed the limit authorized by law, only $9,000 were in fact issued. Subsequently the intervenors herein purchased two of the bonds in good faith and in the usual course of business, and are now bona fide holders thereof. The total assessed valuation of all real and personal property of the village for the year 1885, as equalized by the state board of equalization for that year, was $231,086. At the time the proposition was submitted to the voters the village was indebted in the sum of $2,000 on account of certain bonds issued by it for the construction of a bridge, and a floating indebtedness of about $300, the latter being represented by outstanding unpaid village orders. On the theory that the issuance of the bonds was illegal and unauthorized, plaintiff, a taxpayer, brought this action to restrain and enjoin the further payment of interest.

It is contended by plaintiff that the bonds are void for various reasons: (1) That the contract, or, as termed by the statute, the "mutual agreement," between the railway company and the village, resulting from the proposition of the company and its acceptance by the voters, was wholly void, for the reason that it provided for bonds to the amount of $10,000, which, it is admitted, was in excess of the statutory limit, and conferred no authority upon the village officers to issue bonds in any amount. (2) That the amount actually issued, $9,000,

was also in excess of the statutory limit, and void. (3) That as the village of Red Lake Falls was not in existence at the time of the passage of section 2771, it having been subsequently incorporated by special act of the legislature, the statute has no application; and, further, that it was in effect repealed, in so far as the village was concerned, by the act of its incorporation. The first two propositions are presented in appellant's brief with much force, and are not without merit. But in the view we take of the case, they are not decisive; for if it be conceded that the objections there made would be fatal, if seasonably interposed, they are entirely overcome by the contention of respondents that in any event the bonds are valid in the hands of innocent holders on the ground of estoppel and laches. To this feature of the case we turn our attention.

1. It is not claimed that there were any fatal errors or irregularities in the proceedings leading up to and including the election upon the proposition whether the bonds should be issued, aside from the objections embodied in the first proposition above referred to, nor any claim that the railway company failed fully to comply with the terms of its contract. It affirmatively appears that plaintiff is, and has been, a taxpayer of the village for more than six years past, and taxes for the payment of interest upon the bonds as it accrued have been annually levied and collected, and the interest promptly paid for thirteen years prior to the commencement of this action. The bonds were issued, delivered to the railway company, and by it sold and transferred to good faith purchasers; and they are now, according to the findings of the trial court, all owned by bona fide holders. Under such circumstances, authorities are numerous that the long delay and laches in calling the validity of the bonds in question will defeat an action by a taxpayer to restrain their payment, at least where a total lack of power or authority to issue the bonds is not shown. It is quite clear in the case at bar that the municipality could not maintain an action for their cancellation, and a taxpayer can have no greater rights. It is wholly unlike an action to restrain the original issuance of such bonds, for in that case the objection would be timely and seasonable and interfere with no vested or other rights. But where the bonds have in fact been issued and put into circulation, and their validity sanctioned and vouched for by the conduct of taxpayers and public authorities by the levy and

collection of the taxes for, and in the prompt payment of, interest, a different principle applies. Reference to a few of the cases will show the trend of authority upon this subject.

In the case of Brown v. Bon Homme, 1 S. D. 216, 234, 46 N. W. 173, the court said: "The plaintiff proved on the trial that he purchased the bonds in suit—being a part of the July, 1877, issue—in 1880, and paid their full par value, and without notice of any irregularity in their issue, or of any defects in the same. Whatever exception the people of Bon Homme county might have taken to these bonds at the time they were issued, it is certain they took none, either as individuals or through their authorized agents, the county commissioners, until long after these bonds had passed into the hands of innocent purchasers for value. They stood by and permitted taxes to be levied to pay the interest, and from which the interest on the coupons for several years was promptly met and paid without protest, remonstrance, or complaint. And now it is asked that the irregularity in the issuance of these bonds, in the acts of their own officers, which they might have avoided by prompt action, but which they so long acquiesced in and repeatedly ratified, may be set up to defeat the bonds in this suit on the part of an innocent purchaser for full value, and who had, or may have, relied upon the long acquiescence and repeated acts of ratification. The records of the county show that the warrants surrendered up for these bonds were destroyed in 1877 by the agents of the defendant. To compel an innocent purchaser to now litigate with the county, after a lapse of more than ten years, the validity of these warrants, when the warrants themselves are destroyed, and the facts relating to them have almost, if not entirely, passed from memory, would, it seems to us, be doing manifest injustice to the present holders of the bonds."

In Board v. Hinchman, 31 Kan. 729, 3 Pac. 509, the Kansas supreme court held that where aid is given to railroads under enabling acts and bonds issued in exchange for stock, or the bonds sold and the stock purchased, which is retained by the municipality, or even where there is a donation of the bonds, and interest is paid for a number of years, the municipalities are concluded as to any irregularities in the proceedings leading up to their issue; citing Johnson v. County, 24 Ill. 75; Commonwealth v. Councils, 43 Pa. St. 391.

Calhoun v. Millard, 121 N. Y. 69, 24 N. E. 27, was an action in equity by certain taxpayers to have its bonds, issued by the town in aid of a railroad, which bonds were invalid for irregularities in their issue, surrendered for cancellation by the holders, who had purchased the same in good faith before maturity, and without notice of any irregularity. The town had recognized the bonds as valid, and for nine years had paid the interest thereon as the same accrued. In passing upon the question presented, the court said: "The town and the taxpayers permitted the bonds to be dealt with and taken by savings banks and others for nearly ten years, not only without, so far as appears, a word of warning or protest, but, by affirmative acts of recognition, encouraged investment therein as safe and valid securities. * * * They are now in the hands of bona fide holders. * * * The denial of relief in this case may result practically in the enforcement of the bonds in question, and also of other town bonds issued and held under similar circumstances. But in contrasting the relative conduct and situation of the town and the taxpayers on the one side and the purchasers of bonds on the other, we cannot say that such a result will be repugnant to any principle of justice or equity." It has been held that where a town has issued bonds and paid interest thereon for six years without questioning their validity, a court of equity will not, at the town's instance, cancel them in the hands of an innocent purchaser for value, even though they were actually invalid. Town v. Becker, 123 N. Y. 161, 25 N. E. 369.

In the case of Supervisors v. Schenck, 5 Wall. 772, 781, it appeared that counties were authorized by statute, upon a proper vote, to subscribe for stock and pay in bonds. An election was ordered by the county court, when in fact it should have been ordered by the board of supervisors. At the election the proposition was carried, and the supervisors subscribed and issued the bonds, received the stock, ordered the levy of taxes, and paid the coupons attached to the bonds as they fell due for a period of from nine to ten years. The court held that by its acquiescence, conduct, and acts the county had ratified the bonds, at least in the hands of an innocent holder, and that the county was estopped to set up the irregularity mentioned as a defense.

The case of Brown v. Milliken, 42 Kan. 769, 23 Pac. 167, is very similar to the one at bar. There it appeared that the funding bonds

in suit were issued in exchange for former bonds issued in aid of a railroad, and the proceedings in relation to the issue of the funding bonds were defective, the defense sought to be interposed being that they were illegally issued (1) because in excess of the amount authorized by law, (2) in excess of the amount stated in the notice of election, (3) because the notice of election gave only fifteen days' notice, whereas the statute required thirty days. It appeared that the township for a number of years levied and collected taxes for, and paid the interest on, the funding bonds, and paid a part of them off; they kept the original bonds, and cancelled them. The court held that the defense could not be pleaded, and that by said acts it was estopped to plead such irregularities. Other cases on this subject are cited and reviewed in Simonton, Mun. Bonds, § 243.

In applying the doctrine of estoppel, a distinction is made between cases where there was a total want of authority in the municipal officers to issue the bonds, and those where authority in fact existed but was irregularly exercised. Where bonds are issued without authority they are wholly void, even in the hands of innocent holders. Burr v. Carbondale, 76 Ill. 455. This is on the principle that those who deal in such securities are conclusively presumed to know the extent of the authority of the municipal officers who issue them. But there was no total want of power in the case at bar; it was expressly granted by G. S. 1894, § 2771. That statute authorizes any county, town, city, or village in the state to issue bonds to aid in the construction of railroads in the manner therein provided. It provides for an agreement between the railway company and the municipality, specifying terms and conditions for the issuance of such bonds, the amount, rate of interest, when payable, and other details; and then provides that

> "No bond shall be issued by any city, village, or town, under the provisions of this act, to an amount exceeding, together with its then existing indebtedness, five per centum upon the value of the taxable property therein."

It is contended in this case that the amount provided by the contract between the village and the railway company, viz., $10,000, exceeded the limit authorized by the statute; and plaintiff urges that because of that fact the contract was a nullity, and conferred no power upon

the village authorities to issue bonds in any amount; that the power to issue the bonds was not alone conferred by the statute, but by the statute and vote of the people combined; and that, as the authority conferred by the people was in excess of that permitted by law, the contract was void. The objection would in all probability have been decisive against the right to issue the bonds had it been presented in an action to restrain their issue in the first instance; but in view of the fact that bonds were actually issued, and intended by the officers to be within the limits prescribed by law, and are now in the hands of innocent holders, the objection is unavailing as the basis of an action by a taxpayer to restrain their payment. The law is thoroughly settled that, where there is an excessive issue of bonds by a municipality under statutory authority, the bonds in the hands of innocent holders are invalid only to the extent of the excess. Daviess Co. v. Dickinson, 117 U. S. 657, 6 Sup. Ct. 897; City of Columbus v. Woonsocket Inst., 114 Fed. 162, 52 C. C. A. 118; Keene Five-Cent Sav. Bank v. Lyon Co. (C. C.) 97 Fed. 159; Ætna Life Ins. Co. v. Lyon Co. (C. C.) 95 Fed. 325; McPherson v. Foster, 43 Iowa, 48; Culbertson v. City, 127 Ill. 30, 18 N. E. 781; Stockdale v. School District, 47 Mich. 226, 10 N. W. 349; Nolan v. State, 83 Tex. 182, 17 S. W. 823; Omaha v. City, 15 Neb. 333, 18 N. W. 63.

It was held in Nolan v. State, supra, that bonds issued by the county and in the hands of innocent holders, though in excess of the amount the county could lawfully issue, were valid pro rata to the extent of the statutory limit. In McPherson v. Foster, supra, a school district had issued its bonds to an amount exceeding the amount permitted by law, and in an action by a taxpayer to restrain their payment the court held that the bonds were void only to the extent of the excess. In Culbertson v. City, supra, the city of Fulton had issued bonds beyond the lawful limit, and they were upheld in the hands of innocent holders to the extent of the amount authorized by law. In Keene Five-Cent Sav. Bank v. Lyon Co., supra, an excessive issue of bonds was held, there appearing nothing on their face to show that the municipality had exceeded its authority, valid in the hands of bona fide holders up to the legal limit. It was said in Finlayson v. Vaughn, 54 Minn. 331, 56 N. W. 49, though the precise point was not perhaps there before the court:

"It is, however, insisted by the plaintiff that the amount issued, together with the coupons, was in excess of five per cent. of the assessed valuation of the property of the town. Conceding that the plaintiff is right in this, it does not follow, as respondent suggests, that the entire indebtedness is void, but the invalidity would attach only to the excess over the statutory limit."

The same principle is laid down in all the cases above cited, and is a sound and wholesome doctrine, one that protects securities of this character in the commercial world, and those who deal with them in good faith. It must therefore be held in the case at bar that the contract between the village and the railway company was not wholly void, conferring no authority whatever upon the village officers, but void only to the extent $10,000 exceeded the five per cent. limit fixed by the statute. It appears, however, that but $9,000 in bonds were in fact issued, and whether this was to some slight extent beyond the statutory limit we need not determine. If it be conceded that the statutory limit was exceeded, the principle of the above cases would apply, and render the bonds void only to the extent of the excess.

It is further contended that the statute under which the bonds were issued was repealed by implication, so far as concerns the village of Red Lake Falls, by the act incorporating the village; but this position cannot be sustained. That act contains no express repealing clause, and this view is attempted to be sustained upon the theory that the act contains certain limitations and restrictions upon the authority of the village to create indebtedness which are inconsistent with the exercise of the power granted by the statute. Repeals by implication are not favored. The provisions of the charter and those of the statute are not irreconcilable or necessarily inconsistent; both may stand and be operative without repugnance to each other. State v. McCardy, 62 Minn. 509, 64 N. W. 1133; State v. Egan, 64 Minn. 331, 67 N. W. 77; Beck v. City of St. Paul, 87 Minn. 381, 92 N. W. 328; State v. Bailer, supra, page 186. The statute refers exclusively to the issue of bonds to aid in the construction of railroads, while the charter contains no provisions upon that subject whatever. The provisions of the charter here relied upon refer to debts contracted for municipal purposes, and this must be held to refer to such expenses as are necessary to the usual and ordinary management of municipal affairs.

The contention that section 2771 of the General Statutes did not apply to the village of Red Lake Falls, because enacted prior to its incorporation, cannot be sustained. That statute was general in its terms, and must be held to apply to any city or village existing during the life of the law.

Other assignments of error discussed in the brief of appellant have been considered, but are not of sufficient importance to require special mention. The result of our examination is, as already indicated, that the long delay and laches' of plaintiff and the other taxpayers of the village is a bar to the action, and plaintiff cannot recover. The court below correctly disposed of the case, and the judgment appealed from is affirmed.