THE HEBREW ORPHAN ASYLUM OF THE CITY OF NEW YORK, Plaintiff, *v.* THE CITY OF NEW YORK, Defendant.

Supreme Court, New York County, January 8, 1934.

*Lauterstein & Conroy* [*Leon Lauterstein* and *Emanual Dannett* of counsel], for the plaintiff.

*Arthur J. W. Hilly, Corporation Counsel* [*Alfred D. Jahr, Assistant Corporation Counsel,* of counsel], for the defendant.

MILLER, J. This action is brought to remove an alleged cloud upon the title to premises situated at the southwest corner of Seventy-seventh street and Third avenue, in the borough of Manhattan. Plaintiff claims an estate in fee simple absolute, and seeks a decree adjudging that the city of New York has no right, title

or interest in the land. The city does not maintain that it is the owner. It claims an interest upon the ground that the resolution of the board of aldermen adopted on December 23, 1874, and approved by the mayor on December 31, 1874, and the subsequent acts of the Legislature and resolutions of the board of aldermen granting permission to lease in perpetuity and other rights are null and void in that they contravene the provision of the State Constitution that " No * * * city * * * shall hereafter give any * * * property * * * to or in aid of any individual, association or corporation."

In October, 1860, pursuant to chapter 316 of the Laws of 1860, the mayor, aldermen and commonalty of the city of New York conveyed the land to the plaintiff. The deed reads in part as follows: " to hold * * * unto the said parties of the second part, their successors and assigns, forever, provided, however, and this grant and conveyance are upon the express condition that if at any time and whenever the said property or any building or buildings which may be erected thereon shall be used for any other purpose or purposes than as an asylum for Jewish or Hebrew Orphans, half orphans and indigent children, then and in every such case these presents and the grant hereby made shall be absolutely void and of no effect and the said parties of the first part, their successors or assigns, may enter into and upon the premises hereby conveyed, and have, possess and enjoy the same again as of their former estate, as fully as though these presents had never been made, anything herein to the contrary notwithstanding."

Thereafter, in December, 1874, pursuant to chapter 251 of the Laws of 1874, the conveyance made in 1860 was ratified, and by resolution duly adopted by the board of aldermen and approved by the mayor, the plaintiff was " permitted and authorized *at all times hereafter to sublet or lease the whole or any part of the several lots of land theretofore conveyed,* * * * provided that the proceeds of the leases * * * shall be applied to the uses and for the purposes specified in Chapter 251, Laws of 1874, and for no other," and " Further provided, that such lots and the improvements thereon if used for any other purpose than for a Hebrew Benevolent and Orphan Asylum shall not be exempted from taxation." (Italics mine.)

The plaintiff has been in possession since 1860. Between 1860 and 1884 the premises were used for institutional purposes; during that period plaintiff expended $2,000,000 in constructing buildings on the land; from 1884 to date no part thereof has been used for institutional purposes, the proceeds, however, being used for such

purposes. For the past forty-nine years real property taxes and water assessments have been regularly imposed by the city; for about thirty years the premises were leased by the city through the board of education at an annual rental of $7,000, the plaintiff receiving from the board of education during that period about $210,000 in rentals. In September, 1895, plaintiff sold fifty feet of the original tract to Joseph Seidenberg, and in 1898 plaintiff sold another fifty feet to Theresa Schiff.

Section 11 of article 8 of the State Constitution, ratified by the electorate in 1874, reads in part as follows: " No county, city * * * shall hereafter give any money or property * * * to or in aid of any individual, association or corporation * * *." The city contends that the resolution of December, 1874, granting permission " at all times to lease the whole or any part of the land " violates this section of the State Constitution.

This constitutional amendment did not affect the resolution of December, 1874, *as it did not go into effect until January 1, 1875*. It was approved by the voters at the same election as was article XVI (now known as XIV) of the Constitution. This article declared: "All amendments to the constitution shall be in force from and including the first day of January succeeding the election at which the same were adopted, except when otherwise provided by such amendments." Consequently, when the People adopted it, they must be deemed to have assented to the view that this article as well as section 11 of article 8 were to become part of the Constitution on the 1st of January, 1875. The voters at the election in 1874 having declared that all constitutional amendments, in the absence of specific designation to the contrary, were to be operative upon the first of the year succeeding the election, it would be anomalous to give prior effect to a constitutional amendment adopted at the same time. In *Real v. People* (42 N. Y. 270) the facts presented were that the voters rejected the proposed Constitution of 1869, except the judiciary article; among the rejected portions was the proposed fifth section of article XIV, providing that the Constitution, if adopted, should go into effect on January 1, 1870. Though the approved article was silent as to the time when it should become effective, it was held not to be operative until January 1, 1870. In *People v. Gardner* (45 N. Y. 812, at pp. 813, 814) the court, in referring to *Real v. People (supra)*, says: " It is held in *Real v. People* (42 N. Y. 270), that the canvassing of the votes, and the determination and declaration of the result by the board of state canvassers, was the adoption by the people provided for in the fifth section of the fourteenth article of the instrument proposed to the people as a new Constitution. That section reads as follows:

' Sec. 5. This Constitution shall be in force from and including the first day of January, *next after its adoption by the people*, except as herein otherwise provided.' (Italics are those of FOLGER, J.) And it was held in that case, that the people voting upon the whole instrument, though they assented to but one article of it, must have assented to that, in view of the time for it to go into effect, declared by the fifth section above quoted. And that the judiciary article, therefore, was in force, as a part of the Constitution of the State, on the first day of January, 1870, and not before that."

In *Town of Cherry Creek* v. *Becker* (123 N. Y. 161, 169) the court, in referring to this section, states: " Section 11 of article 8 of the Constitution, *which went into effect on the 1st day of January, 1875.*" (Italics mine.) (See, also, Lincoln's Constitutional History of New York, vol. 2, p. 572.)

In *Matter of Mahon* v. *Board of Education* (171 N. Y. 263, at p. 265) the court, in commenting on the former right of the Legislature to make appropriations for charitable purposes, says: " In *Town of Guilford* v. *Supervisors of Chenango County* (13 N. Y. 143) the broad doctrine was laid down that ' The Legislature is not confined in its appropriation of the public moneys  *  *  *  to cases in which a legal demand exists against the state. It can thus recognize claims founded  *  *  *  in gratitude or charity. Independently of express constitutional restrictions, it can make appropriations of money whenever the public well being requires or will be promoted by it, and it is the judge of what is for the public good.' *This remained the law till 1875*, when the people thought it necessary to impose restrictions, which was done by the constitutional amendments adopted in that year.  *  *  *  These amendments eliminated all considerations of gratitude and charity as grounds for the appropriation of public moneys." (Italics mine.)

Chapter 316 of the Laws of 1860 provided that " The mayor, aldermen and commonalty of the city of New York are hereby authorized and empowered to grant and convey to said society [the plaintiff], in *fee* or otherwise." The resolution adopted by the board of aldermen in October, 1860, reads in part as follows: "*Resolved*, that the Comptroller be and he is hereby authorized and directed to convey *in fee simple* to the " plaintiff. The deed of October 29, 1860, grants and conveys the premises to the plaintiff " and to their successors and assigns forever  *  *  *  together with the reversion, or reversions, remainder and remainders, rents, issues and profits thereof," upon the express condition that whenever the property shall be used for other purposes than an asylum the grant shall be void, and the city may re-enter.

It is, therefore, manifest that when the constitutional amendment

that no city shall hereafter give any money or property in aid of any individual or association went into effect on January 1, 1875, the plaintiff had been released from the condition which prohibited the use of the land except for institutional purposes, express authorization and permission having theretofore been given " *at all times* to sublet or lease the whole or any part " of the land *for any and all purposes* (italics mine), " anything in any of the several conveyances to the contrary notwithstanding." This permission having been granted in December, 1874, by a resolution passed by the board of aldermen, adopted by the board of assistant aldermen and approved by the mayor pursuant to an act of the Legislature, prevented the city thereafter from annulling the conveyance on the ground that this condition had been broken.

In *Calvary Presbyterian Church* v. *Putnam* (249 N. Y. 111, 115) the court states: " Conditions subsequent are not favored. They are strictly construed because they tend to destroy estates. * * * The grantor himself certainly was authorized to release the grantee from its obligation to perform conditions and, even prior to a breach, to waive his possible right of reverter. He could have taken any course agreeable to him by which this possible right might have been divested. No one disputes the proposition that, as long as the conditions existed unbroken, all interest in the estate remained out of the grantor and his heirs. Until the contingency happens the whole title is in the grantee. (*Vail* v. *L. I. R. R. Co.*, 106 N. Y. 283, 287.) Neither the grantor nor his heirs possessed anything except a right to take advantage of a breach. This is not an estate. (*Fowler* v. *Coates*, 201 N. Y. 257.) "

In *Upington* v. *Corrigan* (151 N. Y. 143, at p. 153) the court, in referring to a condition subsequent, held: " That which the grantor retained was never regarded as an interest in real property, or as an assignable chose in action." (See, also, *People* v. *Wainwright*, 237 N. Y. 407, at p. 411.) This is also the rule where the State is grantor. (*Matter of Benedict* v. *Lunn*, 244 N. Y. 373, 380, 381.)

In its brief the city asserts: " The city's contention rests upon the decision of the Appellate Division in the case of *Mount Sinai Hospital* v. *Hyman*, 92 App. Div. 270." That case, however, is clearly distinguishable. There the city had executed a *lease* to Mt. Sinai Hospital of certain lands to be used *solely and only for institutional purposes;* no " grant " existed giving the right " at all times " to lease or to sublet *to others.* In 1898 the city conveyed the property to Mt. Sinai Hospital, and as the lessee possessed only the privilege to use the land for institutional purposes it was held that the privilege to sell was a violation of the then existing provision of the Constitution forbidding the city from giving any money

or property to or in aid of any individual or association. In the instant case, however, when the State and the city authorized the plaintiff to lease and to sublet *to others in perpetuity*, there was in existence no constitutional inhibition.

On September 12, 1895, pursuant to chapter 505 of the Laws of 1895, and a resolution duly adopted by the board of aldermen, the mayor, aldermen and commonalty of the city executed a deed wherein, after making specific reference to the statute and deed of 1860 and the statute and authorization of 1874, they again granted and released the original tract to the plaintiff, its successors and assigns, forever. At the time that this deed was executed the city was prohibited, without valuable consideration received, from conveying any property. No additional rights or interest, however, were granted by this indenture. Prior thereto, in 1860, the premises had been conveyed to the plaintiff " and their successors and assigns forever," upon condition that the property shall be used as an asylum, and in 1874 authority to lease the land for all purposes to others in perpetuity and to retain the rents and profits thereof had been granted to the plaintiff. Assuming, however, that there still remained a possible right of reverter in the event of a *sale*, this possibility possessed no value capable of estimate. (See *First Reformed Dutch Church* v. *Croswell*, 210 App. Div. 294, 295; *Lyford* v. *Laconia*, 75 N. H. 220; 22 L. R. A. [N. S.] 1062; *Chandler* v. *Jamaica Pond Aqueduct*, 125 Mass. 544, 547; 10 R. C. L. 139 [Eminent Domain].) The plaintiff had then the perpetual right to the rents and profits, and while a sale might have brought immediate payment of a sum in lieu thereof, such sale would not in effect constitute an endowment, as the possibility of a fund had been *created* in 1874. The act of 1895 and the subsequent deed did not, therefore, violate the constitutional amendment. Apparently this course was taken solely for the purpose of clearing the record title. As was said in *People ex rel. Metropolitan St. R. Co.* v. *Tax Commissioners* (174 N. Y. 417, 437, 438): " Every presumption is in favor of the constitutionality of an act of the Legislature, and, if the constitution and the act can be reasonably construed so as to enable the latter to stand, it is the duty of the courts to give them that construction * * *. The statute should be considered in the light of the circumstances existing when it was passed."

Under the circumstances, there is vested in the plaintiff a fee simple absolute.

Submit findings and decree accordingly.